Filed 8/1/16  P. v. Hiroshige CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD HIROSHIGE,<br><br>    Defendant and Appellant. | B266499<br><br>(Los Angeles County<br>Super. Ct. No. PA083343) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cynthia L. Ulfig, Judge.  Affirmed as modified and with directions.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Richard Hiroshige appeals the judgment following his conviction and sentence for two felony counts of theft of access card information in violation of Penal Code section 484e, subdivision (d) (section 484e(d)),[1] and two misdemeanor counts of identifying information theft in violation of section 530.5, subdivision (c)(1). Appellant committed those crimes, and was tried, convicted, and sentenced in 2015, after voters approved Proposition 47, the Safe Neighborhoods and Schools Act, in the November 2014 General Election. Proposition 47 enacted section 490.2, subdivision (a) (section 490.2(a)), which states, "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor," with exceptions not applicable here.

We conclude this provision applies to theft of access card information in violation of section 484e(d). As a result, the prosecution could only obtain felony convictions if it proved beyond a reasonable doubt that the value of the access card information at issue exceeded $950. It offered no evidence of value, so insufficient evidence supported appellant's felony convictions and we must reduce those counts to misdemeanors and remand for resentencing.

We further find the trial court violated appellant's rights under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) by denying his request to represent himself at sentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Around 5:30 a.m. on March 31, 2015, Los Angeles police officers knocked on the door to a hotel room in Los Angeles, and appellant answered. The officers learned he was on probation, so they searched the room. Inside a duffle bag belonging to him, they found a 110-page spiral notebook containing the "financial profiles" for various individuals, including "[n]ames, dates of birth, Social Security numbers, bank account numbers, [and] credit card numbers." Two of those individuals—Dorothy Ehlig and

---

[1]    All undesignated citations are to the Penal Code unless otherwise noted.

2

Daniel Schwarz—testified they had not given anyone else permission to use their personal and financial information. They did not testify to the amount of money in the accounts attached to the information in the notebooks or to any actual loss from the use of the information.

In an interview with police, appellant said he had the notebook for over a month, and he appeared to know the information it contained could be used to commit fraud and financial crimes. He claimed he received the notebook from someone called "Sandman," and he intended to return it to its owner, a person named Jake. He also told detectives he had stolen a memory card from Sandman's cell phone containing additional financial profiles.

A Los Angeles detective specializing in identity theft and commercial crimes testified the type of financial information in the notebook could be used to fraudulently purchase items, especially through online retailers.

Appellant was charged with multiple counts, but the prosecution proceeded on only four of them: two felony counts of theft of access card information (§ 484e(d); counts 6 & 8); and two misdemeanor counts of theft of identifying information (§ 530.5, subd. (c)(1); counts 7 & 9). A jury found appellant guilty, and in a bifurcated proceeding, found appellant had suffered two prior "strike" convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and served five prior prison terms (§ 667.5, subd. (b)). He was sentenced to 10 years four months, consisting of the high term of three years on count 6, doubled to six years due to the prior strike convictions; a consecutive term of one year four months on count 8, which was one-third the middle term doubled due to the prior strike convictions; and three consecutive one-year terms for three of the prior prison terms. The court imposed but stayed two 1-year misdemeanor sentences for counts 7 and 9.

## DISCUSSION

### 1. *Proposition 47 and Section 484e(d)*

We conclude section 490.2(a), as enacted by Proposition 47, applies to section 484e(d). In brief, section 490.2(a) redefines theft offenses as misdemeanors if they

3

involve property valued at less than $950, "[n]otwithstanding . . . *any other provision of law defining grand theft*." (Italics added.) Section 484e(d) in turn defines "acquir[ing] or retain[ing] possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently," as "grand theft." Thus, it is subject to the value requirement enacted in section 490.2(a). This is consistent with voter intent that Proposition 47 "shall be broadly construed to accomplish its purposes" of requiring "misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 15, p. 74 & § 3, p. 70.) We reject respondent's contrary arguments.[2]

We also reject respondent's argument that appellant forfeited this issue by not raising it in the trial court. For defendants who violate section 484e(d) *after* Proposition 47's enactment, like appellant here, value in excess of $950 is now an element of a felony offense that the prosecution must prove beyond a reasonable doubt. (Cf. *People v. Sherow* (2015) 239 Cal.App.4th 875, 879 (*Sherow*) [noting under Prop. 47 "shoplifting" in § 459.5 "is now a misdemeanor unless the prosecution proves the value of the items stolen exceeds $950"]; see *People v. Scott* (2013) 221 Cal.App.4th 525, 533 [even before Prop. 47, element of grand theft in violation of § 487 is value exceeding $950]; 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 4, p. 24 ["The first element that makes an unlawful taking grand theft is the value of the property taken."].)[3] Because value in excess of $950 is now an element of the crime, we construe

---

**2**    This issue is currently pending before our Supreme Court. (*People v. Romanowski* (2015) 242 Cal.App.4th 151, review granted Jan. 20, 2016, S231405; *People v. Cuen* (2015) 241 Cal.App.4th 1227, review granted Jan. 20, 2016, S231107.)

**3**    This is not one of the many cases in which the defendant had *already* been convicted and sentenced to a felony prior to Proposition 47 and is now seeking resentencing under the petitioning procedure created by Proposition 47 and codified in section 1170.18. In those cases, the petitioner bears the burden to prove he or she is eligible for relief, which includes showing the value of the property involved in the offense was less than $950. (See *People v. Rivas-Colon* (2015) 241 Cal.App.4th 444,

4

appellant's argument as a challenge to the sufficiency of the evidence, which is preserved even if not raised below. (*People v. Butler* (2003) 31 Cal.4th 1119, 1126.)

On the merits, insufficient evidence supported appellant's felony convictions because the prosecution offered no evidence to prove the value of the access card information exceeded $950. (*People v. Smith* (2005) 37 Cal.4th 733, 738-739 [The test for sufficiency of the evidence ""''is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.""''].) While the two victims testified that appellant possessed their financial information, neither testified as to the amounts in their accounts or any losses they sustained at the time of appellant's arrest. Respondent argues jurors could have relied on their "common sense and experience" to value the access card information in excess of $950 because appellant had a host of additional victim information that could have been used to apply for credit increases or to monitor the accounts to withdraw the maximum amount possible. Setting aside that the jury was never asked to determine value in this way, respondent's approach is nothing more than speculation. Even if the jury could reasonably infer the account information had *some* value, no evidence guided the jury in determining *how much* value.

Respondent cites *Barnes v. United States* (1973) 412 U.S. 837, but it is distinguishable. In that case, the court approved the "deeply rooted" common law inference of guilty knowledge from a defendant's unexplained possession of stolen property. (*Id.* at p. 843.) On the facts before it, the court explained, "The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent

---

449; *Sherow, supra*, 239 Cal.App.4th at p. 880.) At oral argument, respondent requested permission to file a supplemental brief on the issue of whether value is now an element of a felony offense committed after the passage of Proposition 47. We find supplemental briefing unnecessary.

with innocence. On the basis of this evidence alone *common sense and experience* tell us that petitioner must have known or been aware of the high probability that the checks were stolen." (*Id.* at p. 845, italics added.) Here, we are not dealing with appellant's guilty knowledge or state of mind, which is rarely proven through direct evidence. Instead, the prosecution could have easily offered *direct* evidence of the value of the access card information, such as by asking the victims how much money was in their accounts or how much money was actually taken. Respondent cannot now resort to speculation under the guise of the jury's "common sense and experience" in order to fill the evidentiary gap left open at trial.[4]

Because insufficient evidence supported appellant's felony convictions, we must modify the judgment to reduce those felony counts to misdemeanors and remand for resentencing. (See § 1181, subd. (6) ["[I]f the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed."]; *People v. Matian* (1995) 35 Cal.App.4th 480, 487 [reversing felony false imprisonment for insufficient evidence and reducing offense to lesser included offense of misdemeanor false imprisonment].)

---

[4]     Although the parties did not address this issue, we note at least one other problem with appellant's felony convictions: the jury did not find the degree of theft on the verdict form. This would likely independently require us to reduce appellant's convictions to misdemeanors. (§ 1157 ["Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."]; *People v. Love* (2008) 166 Cal.App.4th 1292, 1301 [reducing grand theft convictions to misdemeanor petty theft and remanding for resentencing because jury failed to find offenses involved property valued at more than $400].)

## 2. Faretta *Request Prior to Sentencing*

On July 6, 2015, about a month before trial, the trial court heard a motion from appellant to relieve his counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). The court held an in camera hearing, during which appellant complained about the lack of communication with his counsel. He asked for his counsel to be relieved and to exercise his "*Fahretta* [*sic*] rights under duress," referring to his right to represent himself pursuant to *Faretta, supra*, 422 U.S. 806. The court found appellant's counsel "has done everything he can" on appellant's behalf and denied the *Marsden* motion. The court remained open to appellant's request to represent himself and continued the hearing on that issue for a week. According to the court's minutes, a hearing occurred a week later, but it appears appellant's *Faretta* request was not discussed. The record does not contain a reporter's transcript for that hearing.

On August 4, 2015, the first day of jury selection, the court discussed with appellant a plea offer from the prosecution. Appellant said he and his attorney were "not seeing eye to eye" and he believed his counsel did not "care." He wanted to "extend my *Fahretta* [*sic*] rights, go by myself. If he don't care, then I really don't want to go to trial with him person [*sic*] not caring." A lengthy and heated discussion ensued. Appellant adamantly objected to proceeding to trial with his current counsel, and the court repeatedly stated counsel would not be relieved. Appellant said, "I'm going to be raising hell, I will yell all the way through . . . ." The court responded, "Then I will put you in back, we'll have a microphone go back so you—then the jurors I'm sure would be adequately impressed with the fact that you are creating a ruckus and wasting their time." Appellant responded, "Because you are forcing me to go with an attorney that—that doesn't care about—." His counsel interjected, "Well, hold on just a second, Mr. Hiroshige—" Appellant said, "Those were your exact words, your exact words."

At that point, the court asked the prosecutor to step outside the courtroom. The following discussion occurred between appellant and his counsel:

Appellant: "I don't care about you, I don't care about nothing."

7

Defense counsel: "They don't pay me to care, they don't pay me to be your friend, they pay me to find whether or not [the] People have proved their case beyond a reasonable doubt."

Appellant: "I'm trying to tell you what happened in that room is—you said you didn't care."

Defense counsel: "I don't."

Appellant: "You don't care what really happens, you don't care. And you want me to go to trial with some—he doesn't care about—he doesn't care to hear my side, he only cares about—"

Defense counsel: "Hold on. Hold on."

Appellant: "That's all he cares about. He is the one who said he does not care. And you expect me to go to court—to go to trial with a man who does not care about my case, does not care about me?"

Defense counsel then explained the facts against appellant, including his incriminating statements to police. Appellant denied he told the police he had the notebook, to which defense counsel responded, "Then you are going to have to testify, sir." Appellant responded, "I tried to explain—I tried to explain this to him, but he said he does not care." Defense counsel said again, "I don't."

The court said, "Whether he cares or not is irrelevant." Defense counsel agreed. Appellant said, "What do you mean it's irrelevant? He is my lawyer, he is representing me." The court explained, "He doesn't have to be your best buddy, your best friend. He has to give you legal advice. When I go to a lawyer, my lawyer is not my best friend, my lawyer is giving me legal advice to give me the best advice possible." The court went on to explain that if appellant testified, he could be impeached with his prior convictions, and his testimony would be weighed against the testimony from the officers. The court finished, "And I'm sure this is what [defense counsel] told you, we all have different ways of saying things. He may not give you the warm fuzzies, but he is an excellent lawyer[;] he's tried many cases in my court. And he gets good results. But he can only

8

get the result that is created by the evidence brought forth in the courtroom.  And he's realistic as far as what evidence that will be."

Appellant still did not want to proceed with his attorney.  Defense counsel said, "That's not going to be an appellate issue because the Supreme Court has already ordained that you and I don't have to see eye to eye.  I'm the lawyer, I'm in charge, and I'm doing the best I can with whatever you didn't give me."  Appellant said, "I'd rather do it myself.  I try to give him information, he doesn't care.  He doesn't care."  Defense counsel repeated that appellant would have to testify to give the jury his side of the story.  Appellant said, "You said you did not care, then for six months I tried to—so I tried to fire him prior to this."  He added, "[B]ecause he does not care."  Defense counsel repeated, "No, I don't care."  Appellant said, "Out of respect for you, I kept him."  Defense counsel said, "That's a load of crap."

The court tried to end the discussion there, finding appellant's *Faretta* request untimely.  It reiterated counsel did not have to be "your buddy, your best friend or care, he just has to give you the best possible legal defense he can."  Appellant asked, "How can I trust him if he don't care?  How can I trust him to pick a proper jury?"  Defense counsel said, "That's going to be for everybody else to decide, it's not whether you trust me, it's whether I do a competent job."  Appellant said, "It is my life, damn right you better believe—"  Defense counsel interrupted, "What a marvelous job you have done with it."

The court again tried to move on.  The following exchange took place:

Appellant:  "You can go ahead and send me back to county jail because you can do this without me then if you are just going to railroad me you can do it without me."

The court:  "No one is railroading you."

Appellant:  "You are forcing me to go to trial with a lawyer who does not care about my case.  Period."

The court:  "Okay."

Appellant:  "You are forcing me to—you might as well do it blind, you might as well go ahead and let me go, just hand it in and give me—"

The court: "Now you are going to be—"

Appellant: "Just send me to county jail, then tell me this is what you got."

The court: "You are going to be ordered to be present every day, and you are going to see the jury selection process."

Appellant: "You can send me—put me back there, then."

The court: "Well, no."

Appellant: "You have a microphone, I don't want it, you can just do what you guys do, I don't even want to hear it."

The court: "And we will—"

Appellant: "You are, basically, fucking me, excuse the language, basically fucking me, you know and—and—I can't say—I got no say so about it."

The court: "Okay."

Appellant: "Let's go."

The court: "No, sir. Have a seat."

Appellant: "Let's go."

The court: "Have a seat."

Appellant: "We are done. I'm done here. I'm done here. I'm done here. Period. I'm done."

The court: "So I guess we're going to need to get chains so we can chain him to his chair."

At that point, it appears the bailiff escorted appellant from the courtroom.

Appellant was handcuffed during the first day of trial, but on the second day, defense counsel informed the court that he and appellant had resolved their conflict and requested the handcuffs be removed. The court granted the request. Other than the heated exchange described above, the record does not contain any indication appellant had behavioral problems during trial.

Immediately after the verdicts were read on August 7, 2015, the court and defense counsel set a date for sentencing 18 days later, on August 25, 2015. Appellant stated, "Your Honor, at this time I would like to exercise my *Fahretta* [*sic*] rights once again

10

because I was denied my constitutional rights the first time around." The court denied the request, stating: "[A]ny appellate court will have the opportunity to read the transcript of all these proceedings. Mr. Miller did an outstanding job, he made very compelling arguments in his closing argument, and he obviously acted in your best interest and exercised the best trial strategy he felt he could have. [¶] So the request for you to go pro per is once again denied." Appellant added, "That's what I'd like to object to, the whole trial proceeding." The court noted his objection and overruled it.

The court sentenced him on August 25, 2015. After defense counsel announced there was no legal cause why sentence should not be pronounced, appellant raised several substantive arguments related to his priors. He moved for a continuance pursuant to section 1050 on the ground that the court improperly denied his *Faretta* request and he was "in the process of retaining private counsel as to allow me to file a new trial motion as to insure no further miscarriage of justice occurs." The court denied the section 1050 request as untimely.

Appellant claims the court's denial of his *Faretta* request after the verdicts and prior to sentencing violated his constitutional rights.[5] On this record, we agree.

"A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently." (*People v. Lynch* (2010) 50 Cal.4th 693, 721 (*Lynch*), disapproved on another ground by *People v. McKinnon* (2011) 52 Cal.4th 610, 637-638.) The same rule applies to requests for self-representation made a reasonable time prior to sentencing. (*People v. Miller* (2007) 153 Cal.App.4th 1015, 1024 (*Miller*).)

In deciding whether a request is timely made before trial, a court may consider the totality of the circumstances, including the time between the motion and the trial date, whether counsel is trial-ready, the number and availability of witnesses, the complexity

---

[5] Appellant does not raise on appeal any error respecting the pretrial *Marsden* or *Faretta* rulings.

11

of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation. (*Lynch, supra*, 50 Cal.4th at p. 726.) Adapting these factors to a request made prior to sentencing, a court may consider the time between the request and sentencing, whether counsel is ready for the sentencing hearing, the complexity of the sentencing, the number and availability of potential witnesses, and whether the defendant could have requested self-representation earlier. A court must also look to the "delay that would be occasioned by granting the motion." (*People v. Mayfield* (1997) 14 Cal.4th 668, 810, disapproved on other grounds by *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.) In *Miller*, the court found the defendant's *Faretta* request was timely because it was made two months before sentencing and the defendant indicated he would be ready on the date already set. (*Miller, supra*, 153 Cal.App.4th at p. 1024; cf. *Mayfield, supra*, at p. 810 [*Faretta* request requiring six-month delay untimely]; *People v. Doolin* (2009) 45 Cal.4th 390, 454-455 (*Doolin*) [*Faretta* request untimely when made on date of sentencing and defendant was unprepared to proceed and unable to provide a reasonable estimate of when he would be ready].) The erroneous denial of a timely *Faretta* motion is reversible per se. (*People v. Butler* (2009) 47 Cal.4th 814, 824 (*Butler*).)

If a *Faretta* motion is untimely, it falls within the discretion of the trial court whether to grant or deny it. (*Lynch, supra*, 50 Cal.4th at p. 722; *People v. Windham* (1977) 19 Cal.3d 121, 128.) Factors guiding the trial court's exercise of discretion include "'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.'" (*Lynch, supra*, at p. 722, fn. 10, quoting *Windham, supra*, at p. 128.) The wrongful denial of an untimely *Faretta* motion is subject to harmless error analysis. (*People v. Rivers* (1993) 20 Cal.App.4th 1040, 1050.)

Under the circumstances here, we are compelled to conclude appellant's *Faretta* request prior to sentencing was timely. Similar to the defendant's request in *Miller* made two months before sentencing, appellant made his request 18 days before the date set for

sentencing, which was his first possible opportunity after the verdicts were read. There was no indication he made the request for the purpose of delay or that he would need a continuance to prepare for his fairly straightforward sentencing.[6] Instead, his request was based on his ongoing disagreement and distrust with his counsel, which was undoubtedly exacerbated by his counsel's prior statements that he did not "care" about appellant's case. It appears appellant simply wanted to ensure he could protect his own interests at sentencing because he believed his counsel would not. The trial court did not suggest his request would result in inconvenience, disruption, or delay. It instead denied it because it believed defense counsel had competently represented appellant up to that point.

Respondent contends appellant's request was untimely because it was merely a renewal of his prior untimely request to represent himself at trial, not a new request to represent himself at sentencing. But the record does not support respondent's view. Appellant said he wanted to exercise his *Faretta* right "once again because I was denied my constitutional rights the first time around." This plainly referred to the sentencing hearing, which the parties were discussing. He said nothing about wanting to "renew" his prior request to represent himself at a trial that had already finished. Nor did the court understand appellant's request that way. Instead, it pointed to his counsel's "outstanding" performance at trial, implying counsel would competently represent him at sentencing. Although appellant added, "That's what I'd like to object to, the whole trial proceeding," he was likely referring to a possible new trial motion, not ineffectually renewing a request to represent himself at a trial that had already happened. This interpretation comports with *Miller*, which made clear that sentencing is a separate proceeding from trial, so appellant had an independent *Faretta* right to represent himself at sentencing so long as his request was timely made before sentencing. (*Miller, supra*, 153 Cal.App.4th at pp. 1023-1024.)

---

**6**      Before making his *Faretta* request, appellant did request that his sentencing be continued for 90 days in order to resolve some medical issues and visit his family. The court denied the request. There was no indication he was attempting to delay his sentencing in order to prepare to represent himself.

13

Because we reject respondent's interpretation of appellant's request as a renewal of his prior request, we necessarily reject respondent's argument that appellant's request was an equivocal request to represent himself at sentencing. (See *Doolin, supra*, 45 Cal.4th at p. 453 ["[W]hether timely or untimely, a request for self-representation must be unequivocal."].)

Finally, we reject respondent's argument that appellant forfeited his right to represent himself by engaging in disruptive in-court conduct during the discussion of his *Faretta* request before trial. (See *Butler, supra*, 47 Cal.4th at p. 825; see also *Lynch, supra*, 50 Cal.4th at pp. 721-722 [*Faretta* motion may be denied if defendant "is disruptive in the courtroom or engages in misconduct outside the courtroom that 'seriously threatens the core integrity of the trial'"].) While we defer to the trial court's decision to deny a *Faretta* motion based on disruptive conduct (*People v. Welch* (1999) 20 Cal.4th 701, 735), the court here never hinted that was a reason to deny appellant's request. (See *Butler, supra*, at p. 826 [declining to rely on defendant's jail misconduct in evaluating *Faretta* request because trial court did not rely on that ground]; cf. *People v. Becerra* (June 27, 2016) 63 Cal.4th 511, 519 ["While we review a *Faretta* revocation order for abuse of discretion, it is incumbent upon the court to create a record that permits meaningful review of the basis for its rulings."].) Nor was there any indication his conduct was or would remain so "disruptive, obstreperous, disobedient, disrespectful or obstructionist . . . as to preclude the exercise of the right to self-representation." (*Welch, supra*, at p. 735.) There is no question the pretrial *Faretta* hearing was heated. But appellant was justifiably frustrated with his counsel, who repeatedly (and frankly, inappropriately) said he did not care about appellant. At one point, counsel even unprofessionally responded to one of appellant's comments in open court with the turn of the phrase, "That's a load of crap." But the storm quickly passed, appellant and his counsel repaired their relationship at least for the purpose of trial, and appellant participated in the trial without incident. While we do not condone appellant's reaction, it simply was not the kind of serious misconduct that caused him to forfeit his *Faretta* right to represent himself at the separate, later stage of sentencing. (See *Moon v.*

14

*Superior Court* (2005) 134 Cal.App.4th 1521, 1530-1531 [finding disruptive behavior prompted by the denial of a *Faretta* request was not ground to deny self-representation: "We can hardly deny a party a constitutional right and then hold it against him that such denial prompted outrage and frustration"].)

Because appellant's *Faretta* request was timely, if on remand appellant reasserts his right to represent himself, the court must determine whether the request is made "voluntarily, knowingly, and intelligently." (*Lynch, supra*, 50 Cal.4th at p. 721.) If so, the court must allow appellant to represent himself at resentencing.

### 3. Reduction of Prior Drug Possession Conviction

One of appellant's prior prison term enhancements under section 667.5, subdivision (b) was based on a prior conviction in case No. PA047658 for violating Health and Safety Code section 11377. That offense is now a misdemeanor under Proposition 47 except in circumstances not applicable here. (§ 1170.18, subd. (a); Health & Saf. Code, § 11377, subd. (a).) At sentencing, the trial court granted appellant's oral request to reduce the conviction in that case to a misdemeanor pursuant to Proposition 47 and vacated the jury's true finding for the section 667.5, subdivision (b) enhancement based on that conviction.

Respondent contends and appellant agrees the trial court lacked jurisdiction to reduce appellant's conviction in case No. PA047658 because the court handling the instant case was not "the trial court that entered the judgment of conviction" in case No. PA047658. (§ 1170.18, subds. (a), (f).) The issue is now moot because appellant no longer has any *present* felony convictions that would support the imposition of section 667.5, subdivision (b) enhancements at resentencing. (See *People v. Abdallah* (2016) 246 Cal.App.4th 736, 742 [§ 667.5, subd. (b) enhancement only applies if defendant "'"did not remain free for five years of both prison custody and the commission of a new offense resulting in a *felony* conviction"'" (italics added)].) Thus, without deciding whether the parties are correct on the jurisdictional issue, we will vacate the court's granting of appellant's oral request to reduce his conviction in case No. PA047658 to a

15

misdemeanor.  Our ruling does not preclude appellant from filing a new Proposition 47 petition in the proper court under that case number.

## DISPOSITION

We reduce appellant's felony convictions in counts 6 and 8 to misdemeanors.  We vacate the trial court's granting of appellant's oral request to reduce his prior conviction in case No. PA047658 to a misdemeanor pursuant to Proposition 47.  We remand the case for resentencing.  On remand, if appellant reasserts his right to represent himself at sentencing, the trial court is instructed to conduct further proceedings to determine whether that request is made voluntarily, knowingly, and intelligently.  If so, the court must allow appellant to represent himself at resentencing.

In all other respects, the judgment is affirmed.

FLIER, J.

I CONCUR:

RUBIN, J.

16

**Bigelow, P.J., Concurring and Dissenting:**

I respectfully dissent to the majority's conclusion that Proposition 47 (Prop 47) applies to section 484e, subdivision (d)[1] (484e(d)), prohibiting the possession of an access card or account information. I agree with those cases which find that section 484e(d) is not within the ambit of Prop 47.

Prop 47, "The Safe Neighborhoods and Schools Act," (the Act) reduces the punishment for a number of theft and drug related offenses. It went into effect the day after the voters approved it in the general election on November 4, 2014. (Cal. Const., art. II, § 10, subd. (a).) Section 484e(d) is not among the enumerated crimes to which the Act applies. Respondent contends his offense is reducible based on another new statute brought about by Prop 47, section 490.2. It states: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft *where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950)* shall be considered petty theft and shall be punished as a misdemeanor . . . ." (§ 490.2, subd. (a), italics added.)

Respondent claims that because there was insufficient evidence that value of the access card account information he *possessed* was less than $950, and thus his crime should be a misdemeanor based on section 490.2. I agree with the People that the unlawful acquisition or possession of access card account information under section 484e(d) does not fall within the ambit of section 490.2.

Section 484e(d) provides that "[e]very person who acquires or retains possession of access card account information with respect to an access card validly issue to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." Section 484e(d) thus defines a possession-based crime, not a

---

[1] All further section references are to the Penal Code.

theft-based crime contingent on the value of the money or property taken. (*People v. Molina* (2004) 120 Cal.App.4th 507, 512 (*Molina*).) The value of the access card account information is not an element of the crime defined by section 484e(d). To prove a violation of section 484e(d), *there need not be any "financial, legal or property loss . . . ."* (CALCRIM No. 1952, italics added.) Section 484e(d) criminalizes the possession of access card account information with the intent to use it fraudulently; it does not criminalize the use of access card account information to acquire something of value. Indeed, to violate the statute, the access card to which the account information relates need not be currently valid. (*Molina, supra,* at p. 514.) This is in contrast to section 484g, which renders it grand theft for a defendant to use an unlawfully procured access card or access card account information to obtain money, goods, services, or anything else of value, if the value of such money, goods, services, or anything else of value exceeds $950 in any six-month period.

I acknowledge that section 490.2 expressly applies to all crimes "defining grand theft." But its reference to section 487 and "any other provision of law defining grand theft" is expressly made in conjunction with language referring to crimes where a person obtains property that has a readily quantifiable value, i.e., "money, labor, or real or personal property." As I have pointed out, the crime of possessing access card account information has never required proof of loss. This is because the Legislature was not seeking to protect consumers from the theft of property valued by reference to "money, labor, real or personal property" when it enacted section 484e(d). Instead, "[t]he Legislature intended to criminalize all fraudulent account access by means currently available or that might become technologically available in the future. [Citation.] . . . [T]he Legislature intended to criminalize any means to fraudulently access an account either alone or in conjunction with other access devices. [Citation.]" (*Molina, supra*, at p. 514.) In other words, the Legislature meant to criminalize the mere acquisition or possession of access card account information with fraudulent intent "to provide broad protection to innocent consumers[,]" (*id.* at p. 519), irrespective of the potential or actual monetary loss to the victim. As a result, the *value* of a defendant's

2

acquisition or possession of access card account information is simply not an element of the crime. To attempt to put this crime in the category of those reducible by Prop 47 is like trying to put a proverbial square peg in a round hole.

Including violations of section 484e(d) under the rubric of Prop 47 adds an entirely new element to the crime – that of somehow assigning a value to the access card account information taken or possessed. There is no language in sections 490.2 or 1170.18 that indicates a legislative intent to punish violations of section 484e(d) according to some valuation and there is no language directing how to make such valuation.

Based on the plain language of section 484e(d), I would conclude the possession of access card account information—which is not the theft of property that can be valued by reference to money, labor, or real or personal property—does not qualify as a crime that may be reduced to a misdemeanor under Prop 47.


BIGELOW, P. J.

3