[No. C055398. Third Dist. Sept. 16, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SUMARIA LOVE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part 4. of the Discussion.

1294

## COUNSEL

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Janis Shank McClean and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DAVIS, Acting P. J.**—A jury convicted defendant Sumaria Love of 15 counts of various identity theft-based offenses arising from abuse of her position of trust as a dental receptionist.

On appeal, defendant makes four claims: (1) her conviction in count eight of fraudulently using an access (credit) card was only an attempted offense; (2) the prohibition upon dual convictions for theft and receipt of the same property bars her from being convicted both of fraudulent use of an access card in count twelve and receiving stolen property in count fifteen; (3) her felony convictions in counts four, eight, twelve and thirteen must be reduced to misdemeanors because the jury never determined the amount taken; and (4) the trial court's imposition of an upper term sentence violated her rights to a jury trial and due process under the Fourteenth and Sixth Amendments.

The published portion of this opinion encompasses defendant's first three claims and we agree with the latter two of them. Accordingly, we strike defendant's conviction in count fifteen and remand the convictions in counts four, eight, twelve and thirteen for resentencing as misdemeanors. We disagree with defendant's first claim. In the unpublished portion of this opinion, we reject defendant's fourth claim.

BACKGROUND

*Counts One–Four: Valentine's Day Flowers*

Defendant worked as a receptionist for dentist Hamid N. (Dr. Hamid) during February and March 2005.[1] Rosa D. (Rosa), a patient of Dr. Hamid, noticed on her credit card statement a charge of $91.98 for flowers she had not ordered. An investigator determined that the purchase was made from Dr. Hamid's office computer on Valentine's Day, a date on which defendant worked. Defendant's brother Larry Love testified that he had asked defendant to order the flowers on his behalf; they were delivered to a woman he was dating. Defendant admitted ordering the flowers in a recorded phone conversation with her mother.

*Counts Five–Eight: Victoria's Secret Gift Card*

Another patient of Dr. Hamid, Sadiq M., discovered that someone had charged to his credit card a $500 Victoria's Secret gift card without his knowledge or consent. Investigators traced the order, finding it had been

---

[1] We will use the first names of witnesses and victims for privacy.

placed on March 25, 2005, in Dr. Hamid's name and had listed his office address. The credit card company placed a hold on the purchase, preventing the gift card from being issued.

### Counts Nine–Twelve, Fifteen: Laptop

Also on March 25, someone ordered a laptop computer and an Internet communication camera from Dr. Hamid's office computer and paid for it with his credit card without his knowledge or consent. In April, after quitting her job with Dr. Hamid, defendant changed the address associated with the doctor's credit card to a post office box belonging to her. Police discovered the laptop in defendant's residence.

### Count Thirteen: Postage Meter

After being fired from a subsequent dentist's office for suspicion of dishonest conduct, defendant was hired by dentist Andrea S. She worked at Dr. Andrea's office from October to December 2005. During the time she was employed by Dr. Andrea, defendant removed from Dr. Andrea's office various items without permission, including a postage meter. Police located the postage meter at defendant's residence.

### Count Fourteen: Utilities Bill

Defendant also worked as a receptionist at Capital Oral Surgery from April 2004 to February 2005. During this time, she had access to personal patient information such as Social Security numbers and dates of birth. Nina A. took her son to Capital Oral Surgery to have his wisdom teeth removed in July 2004. In January 2006, Nina discovered someone had opened a utilities account in her name. The account listed Nina and defendant's mother as account holders and serviced defendant's address. Police subsequently located a billing statement in Nina's name at defendant's residence.

Defendant's 15 convictions were comprised as follows. For the Valentine's Day flowers (counts one–four), the Victoria's Secret gift card (counts five–eight), and the laptop (counts nine–twelve), the jury convicted her of four felonies regarding each of these three items: identity theft (Pen. Code, § 530.5, subd. (a));[2] false personation (§ 529); fraudulent possession of an access card (§ 484e, subd. (d)); and fraudulent use of an access card (§ 484g, subd. (a)). Additionally, the jury convicted defendant of receiving the laptop as stolen property (count fifteen). (§ 496, subd. (a).) For the postage meter (count thirteen), she was convicted of embezzlement. (§ 508.) And for the

---

[2] Hereafter, undesignated section references are to the Penal Code.

utilities account (count fourteen), defendant was convicted of a fourth charge of identity theft. (§ 530.5, subd. (a).)

The jury did not make any findings as to the value of the property taken in counts four, eight, twelve, and thirteen.

DISCUSSION

### 1. *Attempted Offense: Count Eight (Victoria's Secret Gift Card)*

Defendant contends that, because the credit card company cancelled the order and prevented the Victoria's Secret gift card from being issued pursuant to her use of Sadiq's credit card, her actions amounted to "at best" an attempted theft under section 484g, subdivision (a), and therefore there was insufficient evidence for the completed offense. We disagree.

■ To determine whether count eight constitutes a completed or just an attempted violation of section 484g, subdivision (a), we must interpret that statute. "Our objective in interpreting a statute is to determine legislative intent so as to effectuate the law's purpose. The first thing we do is read the statute, and give the words their ordinary meanings unless special definitions are provided. If the meaning of the words is clear, then the language controls; if not, we may use various interpretive aids." (*Schnyder v. State Bd. of Equalization* (2002) 101 Cal.App.4th 538, 545 [124 Cal.Rptr.2d 571], fns. omitted.) ■ Here we find that the meaning of the pertinent words in section 484g, subdivision (a) is clear and the plain language controls.

Section 484g, subdivision (a) provides in relevant part: "Every person who, with the intent to defraud, (a) uses, for the purpose of obtaining money, goods, services, or anything else of value, an access card[3] or access card account information that has been altered, obtained, or retained in violation of Section 484e or 484f [i.e., another person's card or account information], or an access card which he or she knows is forged, expired, or revoked . . . is guilty of theft. . . ." (§ 484g, subd. (a).) This statute may be broken down into two elements: (1) that defendant "use[]" the access card or account information, and (2) that defendant do so "for the purpose of obtaining money, goods, services, or anything else of value." (*Ibid.*)

The evidence at trial satisfied the first element of section 484g, subdivision (a)—defendant "use[d]" the card. Merriam-Webster's New Collegiate

---

[3] As used throughout the statutory scheme, "access card" is defined as "any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access card, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by a paper instrument." (§ 484d, subd. (2).)

Dictionary defines "use" in such a context as "to put into action or service: avail oneself of: employ." (Merriam-Webster's 11th New Collegiate Dict. (2003) p. 1378.) Defendant "use[d]" or "put into . . . service" Sadiq's access card information by entering it into an Internet Web page to place an order. The conduct described by the plain language of the statute is completed regardless of whether the object is obtained. To illustrate, we can say that a president may "use," "put into . . . service," or "employ" the military, regardless of whether he achieves his military goals.

The evidence also satisfied the second element that defendant's "use[]" was "for the purpose of obtaining money, goods, services, or anything else of value." The obvious and undisputed purpose behind entering Sadiq's access card information into the Internet was to acquire the Victoria's Secret gift card.

Because the evidence established both elements described plainly in section 484g, subdivision (a), we find there was sufficient evidence to convict defendant of the completed offense.

### 2. *Dual Convictions: Counts Twelve and Fifteen (Laptop)*

Defendant contends her convictions on counts twelve and fifteen violate the prohibition against dual convictions for theft and receipt of the same property. In count twelve, the jury convicted defendant of using Dr. Hamid's credit card information for the purpose of obtaining money, goods, services, or anything else of value. (§ 484g, subd. (a).) These goods included a laptop computer.[4] In count fifteen, the jury convicted her of receiving the same laptop computer as stolen property belonging to Dr. Hamid in count twelve. (§ 496, subd. (a).) For the reasons stated below, we agree with defendant.

Courts have long held that one cannot be charged for theft and receipt of the same property. The Legislature codified this common law rule in section 496, subdivision (a), which states in pertinent part: "A principal in the actual

---

[4] The People presented evidence at trial that defendant purchased a laptop and an Internet communication camera during the transaction in which she used Dr. Hamid's credit card information. The People do not contend that there is no dual conviction because the two convictions are associated with different property—the camera in count twelve and the laptop in count fifteen. Regardless, such an argument would fail. While the information does not specify any particular property as associated with the theft in count twelve, the prosecutor exclusively relied upon the laptop during closing argument. Also, when arguing for count fifteen, the prosecutor stated, "There can be no dispute that that laptop found in [defendant's] room was in fact the same one ordered with Dr. [Hamid's] information."

theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property." (§ 496, subd. (a), 2d par.; see *People v. Garza* (2005) 35 Cal.4th 866, 871 [28 Cal.Rptr.3d 335, 111 P.3d 310].)

Section 496 plainly applies when a defendant is convicted of "theft." Section 484g, subdivision (a) is one of seven statutes imparting special statutory definitions of "theft" that apply in the context of access card offenses. (See §§ 484, 484d–484j.) Under section 484g, subdivision (a)'s plain language, a defendant is "guilty of theft," if he or she "uses, for the purpose of obtaining money, goods, services, or anything else of value, an access card or access card account information that has been altered, obtained, or retained in violation of Section 484e or 484f [i.e., another person's card or account information], or an access card which he or she knows is forged, expired, or revoked . . . ." (§ 484g, subd. (a).) Considering that sections 496 and 484g, subdivision (a) are within the same statutory scheme and use the same term ("theft"), we presume that the Legislature intended section 496, subdivision (a), to apply to section 484g, subdivision (a). (*Catholic Mutual Relief Society v. Superior Court* (2007) 42 Cal.4th 358, 371 [64 Cal.Rptr.3d 434, 165 P.3d 154].)

Because section 496 prohibits one from being convicted of both "theft" and receipt of the same property, we must determine what "property," if any, is at issue when a defendant commits theft under section 484g, subdivision (a). By the plain language of the statute, there is only one reasonable conclusion: the "property" is the "money, goods, services, or anything else of value" which formed the "purpose" behind defendant's "use[]" of the access card. The Legislature plainly associates this list of property with the offense, and we presume the Legislature " 'meant what it said.' " (*People v. Snook* (1997) 16 Cal.4th 1210, 1217 [69 Cal.Rptr.2d 615, 947 P.2d 808].) Here, defendant used Dr. Hamid's access card information for the purpose of stealing the laptop. Her conduct was always attached to the goal of receiving the laptop as property, and that is the property associated with her violation.

Applying our reasoning in part 1. of this opinion, the People contend that, because theft under section 484g, subdivision (a) may be completed even if defendant is not successful in obtaining the property, defendant's subsequent receipt of the laptop constituted a second theft offense. Under section 496, the People maintain, the prosecutor had the discretion to charge this second offense as either theft or receipt of stolen property, and here, the prosecutor chose to charge it as receipt of stolen property.

We disagree. Whether defendant obtained the property or not, the two elements of the section 484g, subdivision (a) offense require an integration of the "use[]" with the "purpose" of obtaining particular "money, goods, services, or anything else of value." When defendant supplied Dr. Hamid's credit card information into the Internet site, her purpose remained constant—to obtain the laptop. While she may complete the section 484g, subdivision (a) theft offense without obtaining the laptop, should she obtain it, it is the "same property" involved in the theft.

Alternatively, the People contend that the "property" correlating to the theft was the monetary loss suffered by Dr. Hamid, and not the laptop. This cannot be the case. The statute requires that defendant use the card "for the purpose of obtaining" certain objects. Defendant used the card to obtain the laptop, not money.

■ Because the laptop is the "same property" associated with defendant's convictions of theft and receiving stolen property, section 496, subdivision (a), bars her dual conviction in count fifteen for receiving stolen property.

### 3. *Counts Four, Eight, Twelve, and Thirteen as Misdemeanors Based on Amounts Taken Not Determined*

Defendant next contends that her convictions for grand theft in counts four, eight, twelve, and thirteen must be reduced to misdemeanors because the jury did not find that the value of the items obtained exceeded $400. The People have conceded the merit of this argument, and we agree.

In counts four, eight, and twelve (the Valentine's Day flowers, Victoria's Secret gift card, and laptop), the jury convicted defendant of grand theft under section 484g, subdivision (a). Section 484g provides, "If the value of all money, goods, services, and other things of value obtained in violation of this section exceeds four hundred dollars ($400) in any consecutive six-month period, then the same shall constitute grand theft." Otherwise, the statute dictates the proper conviction as "petty theft," a misdemeanor. (See §§ 484g, 488, 490.)

■ In count thirteen (the postage meter), the jury convicted defendant of embezzlement, a form of theft, under section 508. (§ 490a.) Embezzlement is punishable as grand theft if the value of the property taken exceeds $400 (§ 487, subd. (a)) or "[w]here the . . . property is taken by a servant, agent, or employee from his or her principal or employer and aggregates four hundred dollars ($400) or more in any 12 consecutive month period." (§ 487, subd. (b)(3).) Otherwise, it is punishable only as petty theft. (§ 488.)

In all four of these counts, the jury was required to determine the degree of the offense under section 1157, which provides: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury . . . must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury . . . to so determine, the degree of the crime or attempted crime . . . shall be deemed to be of the lesser degree." The People acknowledge that section 1157 applies to defendant's case. The offenses of which defendant was convicted, sections 484g, subdivision (a), and 508, require that the jury make the determination of degree, based upon its finding whether the value of the property taken exceeded $400 or not.

Here, the jury made no findings as to the value of the items obtained. As for counts eight and twelve (Victoria's Secret gift card and laptop), the trial court initially instructed the jury to make a finding as to the value of the property obtained by defendant's fraudulent use of the access card information (CALCRIM No. 3220). However, the trial court withdrew this instruction following a question by the jury as to whether the property actually had to be received in order for a value to be placed upon it. The court gave no instruction to assess a value for count four (flowers) or count thirteen (postage meter).[5]

Because the jury did not find that the value of the items obtained exceeded $400 in counts four, eight, twelve, or thirteen, these felony convictions must be reduced to misdemeanors and defendant must be resentenced.

4. *Imposition of Upper Term Sentence: Count One (Valentine's Day Flowers)*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The convictions in counts four, eight, twelve, and thirteen are reduced to misdemeanors and the case is remanded for resentencing. Defendant's conviction in count fifteen is stricken.

---

[5] We note there is insufficient evidence to support a finding of grand theft in count four (Valentine's Day flowers), as the evidence presented valued the flowers at $91.98, and there is no evidence that defendant used Rosa's card on any other occasion within six consecutive months. There is also insufficient evidence to support a grand theft finding in count thirteen (postage meter), because the only evidence presented regarding the value was not asserted for the truth.

\*See footnote, *ante*, page 1292.

In all other respects, the judgment is affirmed. After resentencing, the trial court is directed to send a certified copy of the amended abstract of judgment reflecting these changes to the Department of Corrections and Rehabilitation.

Morrison, J., and Cantil-Sakauye, J., concurred.