Filed 4/5/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B263744 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA105874) |
| v. | |
| THUY LE TRUONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  George Genesta, Judge.  Affirmed in part and reversed in part.

Lori Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Noah P. Hill, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Thuy Le Truong appeals from the judgment of conviction based on illegal possession of bank-issued credit cards and bank customer account and identifying information. In count 1, Truong was charged with acquisition or retention of access card account information with the intent to use it fraudulently in violation of Penal Code[1] section 484e, subdivision (d), based on her possession of two Bank of America credit cards belonging to her neighbors. Count 2 charged the fraudulent possession of identifying information of multiple persons pursuant to section 530.5, subdivision (c)(3), based on Truong's possession of a spreadsheet containing Wells Fargo Bank customer account information. Counts 3 and 4 charged receiving stolen property in violation of section 496, subdivision (a). Count 3 related to Truong's possession of the credit cards, and count 4 was based on Truong's possession of the customer account information on the spreadsheet. Count 5 charged fraudulent possession of identifying information as a misdemeanor under section 530.5, subdivision (c)(1), based on Truong's possession of a coworker's personal identifying information. A jury convicted Truong as charged.[2]

Truong contends: (1) none of her convictions is supported by substantial evidence; (2) because she was convicted of theft under section 484e, subdivision (d), and identity theft under section 530.5, subdivision (c)(3), she could not also be convicted of

[1] Undesignated statutory references are to the Penal Code.

[2] The trial court suspended imposition of sentence and placed Truong on formal probation for a period of five years, with the condition that she serve 180 days in county jail.

receiving the same stolen property in violation of section 496, subdivision (a); and (3) two of her counts of conviction must be reversed because the trial court erroneously admitted evidence of the credit limit for the stolen credit cards.  We agree that section 496 bars dual convictions for theft and receipt of the same property, and therefore reverse one of Truong's two counts of conviction for receiving stolen property.  In all other respects, we affirm.

## BACKGROUND

In 2013, Truong worked for Wells Fargo Bank as a customer service and sales representative, but she functioned primarily as a private banker.  Truong's private banking duties gave her access to internal databases containing personal customer information.  Truong worked with other private bankers, including David Gonzales, whose duties included soliciting businesses in the community to sign up for Wells Fargo services.  During his solicitations, Gonzales would bring with him a form containing some preprinted information, including his "officer portfolio number," an internal Wells Fargo identification specific to Gonzales.  Wells Fargo expressly trained its private bankers, including Truong, not to remove paperwork with personal identifying information from the bank.

Truong's next-door neighbors, Isamabi and Johnny Woods, held a credit card account at Bank of America.  After Bank of America warned Mrs. Woods of suspicious activity on her account, she deactivated her credit cards and ordered replacement cards for herself and her husband.  Mrs. Woods had Bank of America send the cards to her home, where she expected them to arrive in her mailbox, which was unlocked and affixed to a wooden post at the curb in front of her residence.  The cards never arrived.

3

When Mrs. Woods called the bank to report she had not received the cards, the representative confirmed the cards had been sent to her home address. At some point in the months after Mrs. Woods's call to the bank, Truong returned mail to Mrs. Woods which was addressed to the Woodses, saying it had been erroneously delivered to her home. The mail included photos of the Woodses' son, but not the credit cards.

In May 2014, police executed a search warrant for Truong's residence. Two Bank of America credit cards were recovered from Truong's dresser drawer in her bedroom. The cards bore the Woodses' names and did not have any of the usual accompanying paperwork or envelopes with them. Police also seized two Wells Fargo documents from Truong's desk in the home. The first was a spreadsheet containing 48 customers' names and account numbers. The second was a customer account application bearing Gonzales's name and credentials. Wells Fargo policy prohibited Truong from possessing any of this information outside of work.

In an interview with police following the search, Truong explained that the credit cards had been "delivered to [her] house" by "[t]he mailman or something." When asked why she had not returned the cards, Truong replied, "I thought, because at that time I also applied for our Bank of America [*sic*] and then I opened it, it was somebody else's mail." She later stated that her father had actually mistakenly opened the envelope containing the cards, and when she saw them, she thought, "I'm going to return it. And I leave [*sic*] it there and totally forgot about it." Later she changed her story again, explaining, "I was going to return them. I opened it and I saw it, I'm like, who is this? I think next door, but I'm not sure. Either I was going to give it to next door because I think it was next door but I'm not sure. But either give it next door or give it to B of A." When the detective

4

pointed out that the cards' secreted location suggested she had no intention of returning them, she responded, "I put it on the, on the bookshelf. Actually I was going to throw it away but I'm afraid that people might pick it up and I don't know."

## DISCUSSION

On appeal, Truong contends: (1) none of her convictions is supported by substantial evidence; (2) the court erred in allowing convictions for receiving stolen property and other theft offenses involving the same property; and (3) the court erred in admitting evidence of the credit limit for the stolen cards.

Assessing Truong's substantial evidence claim, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Avila* (2009) 46 Cal.4th 680, 701; *People v. Watkins* (2012) 55 Cal.4th 999, 1019–1020.) We draw all reasonable inferences in favor of the verdict and presume the existence of every fact the jury could reasonably deduce from the evidence that supports its findings. (*People v. Maciel* (2013) 57 Cal.4th 482, 515; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "[U]nless [a witness's] testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*Ibid.*; *People v. Maury* (2003) 30 Cal.4th 342, 403.) Rather, " 'it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts,' " and it is not for us to substitute our judgment for that

5

of the jury's.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)
Finally, the trier of fact may rely on inferences to support a
conviction where "those inferences are 'of such substantiality that
a reasonable trier of fact could determine beyond a reasonable
doubt' that the inferred facts are true.  (*People v. Raley* (1992) 2
Cal.4th 870, 890–891.)"  (*People v. Rios* (2013) 222 Cal.App.4th
542, 564.)

" 'The standard of review is the same in cases in which the
prosecution relies mainly on circumstantial evidence.  [Citation.]
" 'Although it is the duty of the jury to acquit a defendant if it
finds that circumstantial evidence is susceptible of two
interpretations, one of which suggests guilt and the other
innocence [citations], it is the jury, not the appellate court[,]
which must be convinced of the defendant's guilt beyond a
reasonable doubt.  " '*If the circumstances reasonably justify the
trier of fact's findings, the opinion of the reviewing court that the
circumstances might also reasonably be reconciled with a contrary
finding does not warrant a reversal of the judgment.*' " ' " ' "
(*People v. Watkins*, *supra*, 55 Cal.4th at p. 1020; *People v. Clark*
(2011) 52 Cal.4th 856, 942–943; *People v. Rodriguez* (1999) 20
Cal.4th 1, 11.)  Reversal on the basis of insufficient evidence is
"unwarranted unless it appears 'that upon no hypothesis
whatever is there sufficient substantial evidence to support [the
conviction].' "  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Truong's challenges to her dual convictions for fraudulent
possession of access card information and receiving stolen
property in counts 1 and 3, and for possession of identifying
information and receiving stolen property present questions of
law and statutory interpretation, which we review de novo.
(*People v. Prunty* (2015) 62 Cal.4th 59, 71; *People v. McGowan*
(2015) 242 Cal.App.4th 377, 380.)

6

Finally, we review the trial court's admissibility determinations for abuse of discretion. (*People v. Cox* (2003) 30 Cal.4th 916, 955.) We reverse for abuse of discretion only when the lower " ' "court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams* (2008) 43 Cal.4th 584, 634–635.)

## I. Truong's Convictions Are Supported by Substantial Evidence

Truong contends that insufficient evidence supports the jury's finding that the Bank of America cards were " 'validly issued to another,' " as required by section 484e, subdivision (d).[3] That is, the prosecution failed to prove Bank of America had issued the credit cards found in Truong's dresser drawer to the Woodses. Truong contends the prosecution therefore also failed to prove Truong " 'received/concealed or withheld from its *owner* property that had been stolen,' " as required by section 496, subdivision (a). (Italics added.) Truong argues that the absence of evidence such as Bank of America paperwork linking the cards with the Woodses' account or the testimony of a Bank of America custodian of records to identify the cards as validly issued left an evidentiary void on an element essential to all of the charges, to wit, that the cards were validly issued to the Woodses. We disagree.

---

[3] Section 484e, subdivision (d) provides: "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."

7

Uncontroverted evidence established that Bank of America validly issued the credit cards to the Woodses in this case. Indeed, Truong does not dispute that the Woodses had an existing Bank of America credit card account or that Mrs. Woods ordered replacement cards, which should have been delivered through the mail to the Woodses' mailbox. Bank of America confirmed it had sent the cards to Mrs. Woods's home. Further, Truong undeniably had the credit cards bearing the Woodses' names in her possession, and Mrs. Woods testified that they appeared to be her missing cards. Finally, Truong herself admitted the cards had been issued to the Woodses by Bank of America when she told police she had planned to return the cards the Woodses or to the bank.

On the basis of this evidence, the jury could reasonably find that the bank cards in Truong's possession were validly issued by Bank of America and belonged to the Woodses. And any inferences the jury might have drawn to reach this conclusion were logical, reasonable, and within the jury's province to make. (See *People v. Jones* (2013) 57 Cal.4th 899, 965; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 89.)

Truong also contends the prosecution failed to establish any intent to defraud, as required to convict under sections 484e, subdivision (d) and 530.5, subdivision (c). With regard to the credit cards, Truong claims (1) the absence of any evidence that she tried to use the cards "strongly indicates" she did not intend to defraud; (2) mere possession does not establish she stole the cards from the Woodses with intent to defraud; and (3) her conflicting statements to police fail to show she had the intent to defraud *at the time* she acquired the cards. However, as Truong admits, use of the cards was not an element necessary to prove an intent to defraud. Accordingly, the lack of evidence of any

8

attempted use of the cards is irrelevant.  (*People v. Molina* (2004) 120 Cal.App.4th 507, 516.)

Moreover, although possession alone does not establish an intent to defraud, a jury could reasonably infer an intent to defraud from the circumstances surrounding Truong's possession of the credit cards.  (*People v. Smith* (1998) 64 Cal.App.4th 1458, 1469–1470 [determining circumstantial evidence was sufficient to support a section 484e conviction].)  For example, police found the credit cards unwrapped and without their accompanying paperwork secreted in a dresser drawer in Truong's bedroom months after Mrs. Woods reported them missing.  Sometime in the months after Mrs. Woods reported to the bank that she had not received the credit cards in the mail, Truong returned mail belonging to the Woodses that had been misdelivered to Truong's residence.  The credit cards were not among the pieces of mail Truong returned.  Police also found two Wells Fargo documents containing identifying information, which Truong should not have possessed.  Finally, Truong's unclear and contradictory statements about how she came into possession of the cards and why she did not return them supported an inference she intended to defraud.

With regard to the spreadsheet and account application Truong had in her possession, Truong argues (1) the absence of any evidence that she tried to use the cards suggests she did not intend to defraud through possession of the documents; (2) mere possession does not prove an intent to defraud; and (3) it was factually impossible for her use the paperwork fraudulently.  Like a violation of section 484e, subdivision (d), however, use of the personal identifying information is not an element of a section 530.5, subdivision (c)(3) offense.  And as with the credit cards, the jury could reasonably infer from the circumstances surrounding

9

Truong's possession of the documents that she had the requisite intent to defraud. (*People v. Lyles* (1957) 156 Cal.App.2d 482, 486 ["intent is rarely susceptible of direct proof and ordinarily must be inferred from a consideration of all the facts and circumstances shown in evidence"].) In this regard, the evidence was overwhelming: Police found not one, but two, different confidential Wells Fargo documents in Truong's bedroom; Truong admitted she knew that Wells Fargo policy prohibited the possession of such documents outside of work; one of the documents belonged to a coworker, and Truong's job responsibilities did not involve use of this document; Truong's purported reason for having the documents—that she was helping clients receive coverage under the Affordable Care Act— was implausible; and she also possessed Bank of America credit cards not belonging to her.

Finally, factual impossibility is irrelevant to intent and, in any event, there was no showing that it was factually impossible for Truong to use the documents fraudulently. As a general matter, factual impossibility has no bearing on proof of intent: one can *intend* to commit fraud, even if in actuality such fraud would be impossible. (See generally *People v. Camodeca* (1959) 52 Cal.2d 142, 147 ["When it is established that the defendant intended to commit a specific crime . . . it is immaterial that for some collateral reason he could not complete the intended crime"].) Here, Truong argues she did not have the requisite credentials to access any identifying information at Wells Fargo from the spreadsheet or to use the form bearing Gonzales's employee information. This is of no consequence. Truong might have thought she had the necessary credentials or she might have devised a way to avoid the credential problem. The evidence about the extent to which Truong's credentials would have

10

allowed her access to identifying information was unclear, but in any event, sufficient circumstantial evidence supported the jury's finding that Truong intended to defraud, regardless of whether she could have actually done so.

## II. Truong's Convictions on Counts 1 and 3 Violate the Prohibition Against Dual Convictions for Theft and Receipt of Stolen Property, but Her Convictions on Counts 2 and 4 Do Not

A. *Truong could not be convicted for both the section 484e, subdivision (d) offense and receiving stolen property under section 496 based on her acquisition and possession of the credit cards.*

Section 496, subdivision (a), which defines the crime of receiving stolen property, provides that "no person may be convicted both pursuant to this section and of the theft of the same property." (*People v. Garza* (2005) 35 Cal.4th 866, 871 (*Garza*).) Truong contends that because she was convicted in count 1 of a theft offense under section 484e, subdivision (d), she may not also be convicted under section 496, subdivision (a) for receiving the same credit cards as stolen property. We agree.

The prohibition in section 496 against dual convictions indisputably applies when a defendant has been convicted of "theft." (*People v. Love* (2008) 166 Cal.App.4th 1292, 1299 (*Love*); *Garza, supra,* 35 Cal.4th at p. 871.) Section 484e is "one of seven statutes imparting special statutory definitions of 'theft' that apply in the context of access card offenses. (See §§ 484, 484d–484j.)" (*Love*, at p. 1299.) Section 484e, subdivision (d) thus categorizes as "grand theft" the "[acquisition] or . . . possession of access card account information . . . with the intent to use it fraudulently." Because sections 496 and 484e, subdivision (d)

11

"are within the same statutory scheme and use the same term ('theft'), we presume that the Legislature intended section 496, subdivision (a), to apply to section" 484e, subdivision (d). (*Ibid.*; *People v. Zambia* (2011) 51 Cal.4th 965, 976–977 [" 'The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible' "].)

The question here is whether Truong's conviction on count 1 under section 484e, subdivision (d) constitutes a conviction for "theft" of the "same property" which was the basis for the charge in count 3 under section 496, subdivision (a). Plainly it is. The "property" in both charges is the credit cards. By convicting Truong under section 484e, subdivision (d), the jury convicted Truong of grand theft of those credit cards. The jury also convicted Truong of receiving those same credit cards as stolen property in violation of section 496, subdivision (a). The plain language of section 496, subdivision (a) prohibits such a result.

Accordingly, we reverse Truong's section 496 conviction for receiving stolen property in count 3, and affirm the conviction under section 484e, subdivision (d) for fraudulent acquisition or possession of access card account information in count 1. (See *People v. Ceja* (2010) 49 Cal.4th 1, 10 [remedy for improper dual conviction of theft and receiving stolen property is to reverse receiving charge]; see also *Love, supra*, 166 Cal.App.4th at pp. 1298–1300.)

B. *Truong's convictions under sections 530.5, subdivision (c)(3) and 496 did not violate the prohibition against dual convictions for theft and receiving stolen property.*

Truong contends her conviction under section 530.5, subdivision (c)(3) for possessing the confidential Wells Fargo documents should be reversed for the same reason. We disagree.

Unlike section 484e, which defines acquisition or possession of access card account information as "grand theft," a section 530.5 offense is outside the statutory scheme governing theft offenses. Rather than defining a theft offense, section 530.5, subdivision (c)(3) provides that "[e]very person who, with the intent to defraud, acquires or retains possession of the personal identifying information . . . of 10 or more other persons is guilty of a *public offense*." (Italics added.) Although commonly referred to as "identify theft" (see *People v. Vidana* (2016) 1 Cal.5th 632, 646, fn. 14), the Legislature did not categorize the crime as a theft offense. Thus, while section 484e is found—along with section 496—in part 1, title 13, chapter 5, "Larceny," section 530.5 is in chapter 8, "False Personation and Cheats."

Truong acknowledges that a violation of section 530.5, subdivision (c)(3) is not a theft offense, but argues that the elements of section 530.5, subdivision (c)(3) "are indistinguishable from the theft elements of possessing the property of another with the intent to deprive the owner of it or to deprive the owner of a major portion of the '*value of the property*.' "

To the contrary, we conclude that the section 530.5, subdivision (c)(3) offense of which Truong was convicted shares few, if any, of the elements of theft by larceny. "To prove the crime of theft, the People must prove that: [¶] 1. Someone took possession of property owned by someone else; [¶] 2. That person

13

took the property without the owner's consent; [¶] 3. When that person took the property he/she intended to deprive the owner of it permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property; [¶] AND [¶] 4. That person moved the property, even a small distance, and kept it for any period of time, however brief." (CALCRIM No. 1800; see also *People v. Davis* (1998) 19 Cal.4th 301, 305.)

By contrast, in order to prove the violation of section 530.5, subdivision (c)(3) in count 2 in this case, the prosecution was merely required to prove that Truong (1) acquired or kept the personal identifying information of 10 or more other persons and (2) did so with the intent to defraud another person. (CALCRIM No. 2041.) Notably absent from these elements is any requirement—central to the crime of theft—that the information be stolen at all. Moreover, by obtaining such information, the defendant does not deprive the rightful owner of it; any number of people can be in simultaneous possession of the same information.

Accordingly, we affirm Truong's convictions in counts 2 and 4 under sections 530.5, subdivision (c)(3) and 496, subdivision (a).

## III. Any Error in Admitting Evidence of the Credit Card Limit Was Harmless

Even assuming the trial court improperly admitted the credit card limit evidence, any error was harmless. Credit cards, by definition, come with credit limits.[4] At worst, the credit limit

---

[4] A credit card is generally defined as a "[s]tandard-size plastic token, with a magnetic stripe that holds a machine

14

evidence admitted here was superfluous and therefore quite harmless.  (*People v. Watson* (1956) 46 Cal.2d 818, 836 [error is harmless unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)  Admission of such evidence, even if erroneous, does not constitute grounds for reversal.

## DISPOSITION

Truong's conviction under Penal Code section 496, subdivision (a) for receiving stolen property in count 3 is reversed. In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION.


LUI, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

readable code.  Credit cards are a convenient substitute for cash or check, and an essential component of electronic commerce and internet commerce.  Credit card holders (who may pay annual service charges) draw on a credit limit approved by the card-issuer such as a bank, store, or service provider (an airline, for example).  Cardholders normally must pay for credit card purchases within 30 days of purchase to avoid interest and/or penalties." (<http://www.businessdictionary.com/definition/credit-card.html> [as of Apr. 4, 2017].)