Filed 3/21/22  P. v. Jensen CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B303083 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA120724) |
| v. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| RYAN PATRICK JENSEN, | |
| Defendant and Appellant. | (NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on February 28, 2022, is modified as follows:

On page 14 in the first paragraph of section B.1. of the Discussion, add this sentence to the end:

> Sanchez testified, "[W]hen I reviewed the incident, I observed Mr. Jensen running out of the garden exit with the power tools."

On page 14 in the second paragraph of section B.1. of the Discussion, delete this sentence:

Next, Jensen was "running out of the garden exit with power tools."

On page 17 in the last paragraph of section B.3. of the Discussion, replace these sentences:

In addition, the footage showed Jensen "running out of the garden exit with power tools." The jury could have inferred Jensen's consciousness of guilt.

with:

In addition, according to Sanchez, the footage showed Jensen "running out of the garden exit with power tools." The jury, which saw the video, could have inferred Jensen's consciousness of guilt from his movement in the parking lot to his accomplice's car.

Appellant's petition for rehearing is denied.

There is no change in the appellate judgment.

_____

PERLUSS, P. J.          FEUER, J.          IBARRA, J. (Assigned)

Filed 2/28/22  P. v. Jensen CA2/7 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RYAN PATRICK JENSEN,<br><br>    Defendant and Appellant. | B303083<br><br>(Los Angeles County<br>Super. Ct. No. KA120724) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Victor D. Martinez, Judge.  Affirmed.

Sunnie L. Daniels, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Colleen M. Tiedemann and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Ryan Patrick Jensen appeals the judgment entered after a jury convicted him of two counts of second degree robbery (Pen. Code, § 211[1]) and three counts of grand theft (§ 487, subd. (a).) Jensen contends the trial court erred in denying his motion to replace his appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). Jensen also contends insufficient evidence supported the jury's verdict on one of his theft counts.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Charges*

The District Attorney of Los Angeles County filed a seven-count information charging Jensen with two counts of second degree robbery (§ 211; counts 1, 4) and five counts of grand theft (§ 487, subd. (a); counts 2, 3, 5, 6, 7). The charges stemmed from five thefts at The Home Depot stores in Monrovia, Covina and Glendora between March 15, 2019 and April 12, 2019. As to all seven counts, the information included special allegations that Jensen had served a prior prison term for a felony conviction within five years of his current charges (§ 667.5, subd. (b)) and that he had been convicted of two prior felonies, rendering him ineligible for probation (§ 1203, subd. (e)(4)).

Jensen pleaded not guilty and denied the special allegations.

B.    *The* Marsden *Motion*

Fifty days before trial, Jensen asked to replace his appointed attorney. The trial court held an in camera hearing

---

[1]    Undesignated statutory references are to the Penal Code.

2

and denied Jensen's *Marsden* motion, as discussed in detail below.

The day before trial, the court asked Jensen if he would like to make another *Marsden* motion. After conferring with defense counsel, Jensen replied, "No. That's fine."

## C.    *The Jury Trial*

The prosecution submitted clips from surveillance videos of all five incidents, which the trial court admitted into evidence. The parties stipulated that the person in the videos was Jensen. In addition, the prosecution presented three witnesses: Michelle Ramos, David Castaneda and Jesus Sanchez. Jensen did not present any witnesses or submit additional evidence.

### 1.    *March 15, 2019 (counts 4 and 5)*

Ramos, a cashier at The Home Depot store in Monrovia, testified about the March 15 robbery and theft. After seeing Jensen leave the store without paying for merchandise in his cart, Ramos asked Jensen for a receipt. Jensen reacted "[a]ggressive[ly]" and told her to "get the fuck away from him." Jensen put his hand in his pocket, which scared Ramos because she did not know whether he had a weapon. Sanchez, an asset protection specialist at The Home Depot store in Monrovia, reviewed the surveillance footage. In the video, Jensen ran out of the store with a shopping cart and put the merchandise into a green sedan. The value of the stolen merchandise, which included power tools, was $1,375.

### 2.    *March 17, 2019 (count 3)*

Sanchez testified about the March 17 theft at The Home Depot store in Covina. Sanchez reviewed the surveillance

footage. In the video, Jensen ran out of the store with a shopping cart without paying for the merchandise in it. Jensen went to a green sedan. The value of the stolen merchandise, which included power tools, was $1,000.

3. *March 18, 2019 (count 1 and 2)*

Castaneda, a member of the loss prevention department at The Home Depot store in Glendora, testified about the robbery and theft on March 18. After Jensen left the store through the garden department with a cart full of merchandise without paying for it, Castaneda ran after him. Jensen had a trash can, a rug and power tools. When Castaneda approached Jensen, Jensen reached into his pants pocket, and Castaneda backed off because he felt "unsafe" and believed he "was in danger of being probably stabbed." Jensen grabbed some of the merchandise and got into a green sedan. The value of the stolen merchandise was $1,078.

4. *March 26, 2019 (count 6)*

Sanchez reviewed the surveillance footage and testified about the March 26 theft at The Home Depot store in Monrovia, as discussed in detail below.

5. *April 2, 2019 (count 7)*

Sanchez testified about the April 2 theft at The Home Depot store in Monrovia. Sanchez reviewed the surveillance footage. In the video, Jensen left through the garden department without paying for products. Power tools and other items were concealed in a trash can. Once outside, Jensen placed the goods in a green sedan, the same vehicle in the surveillance footage of

4

the prior incidents.  The value of the stolen merchandise was $2,073.97.

### 6.    *Jury verdict and admission of prior allegation*

A jury convicted Jensen of two counts of second degree robbery (§ 211; counts 1 and 4) and three counts of grand theft (§ 487, subd. (a); counts 3, 6 and 7).[2]

Jensen admitted the truth of the prior prison term allegation (§ 667.5, subd. (b)).

### D.    *The Sentencing*

The trial court sentenced Jensen to a total of six years in state prison, comprised of a three-year middle term on count 1, one-third of the middle term on count 4 (i.e., one year), and one-third of the middle term of two years each on counts 3, 6 and 7 (i.e., eight months each, totaling two years).  The court struck the prior prison term enhancement.  The court ordered Jensen to pay $280 in court operation assessments and $210 in conviction assessments.  The court also sentenced Jensen to eight months for the felony offense for which Jensen had violated probation, to run consecutive to the sentence in this case.

As the Attorney General points out, the trial court erred in the assessment amounts.  Subdivision (a)(1) of section 1465.8 mandates that an assessment of $40 be imposed "on every conviction for a criminal offense," and subdivision (a)(1) of Government Code section 70373 similarly mandates that an assessment of $30 be imposed "for each misdemeanor or felony." Since Jensen was convicted of five offenses (and not seven

---

[2]     Counts 2 and 5 were lesser crimes of the crimes charged in counts 1 and 4 respectively and were dismissed.

5

offenses), the correct amount of court operations assessments is $200, not $280, and the correct amount of conviction assessments is $150, not $210. But because the minute order and abstract of judgment state the correct amounts, no modification of the judgment is necessary.

## DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion by Denying Jensen's* Marsden *Motion*

Jensen argues the trial court erred by denying his *Marsden* motion to replace his appointed counsel because he and counsel were "embroiled in an irreconcilable conflict," including "their total inability to have meaningful communication with each other." Jensen further argues the denial of his motion prejudiced him and violated his Sixth Amendment right to counsel.

We disagree.

### 1. *Relevant proceedings*

Fifty days before trial, Jensen moved to replace his appointed attorney. The trial court held an in camera hearing under *Marsden, supra,* 2 Cal.3d 118.

Defendant's appointed counsel explained Jensen had four theft-related cases pending before the court, including this case and a felony case for which Jensen was on probation.[3] Counsel described the history of plea offers from the district attorney. Counsel said she made her first appearance in the case on June 17, 2019. At that time, the district attorney had offered "a plea to

---

[3] According to an August 13, 2019 minute order, the four cases were the instant case and cases 9PC02382, KA116263 and KA117969.

6

three counts, including one strike, including all the probation violations, for three years." Jensen "indicated he needed time to think," so counsel continued the case and requested on the record that the offer be held open. But the offer was not held open. On July 2, the district attorney offered a two-year prison sentence for a plea to "all counts, which includes multiple strikes."[4] The district attorney also indicated he would ask the court to impose a sentence of three years eight months for the felony offense for which Jensen was on probation.[5] Again, Jensen "indicated he needed time to think."

Defense counsel explained Jensen "basically quizze[d]" her about her investigation of his case whenever they were in court. She provided Jensen with all the notes from the case. She told him many times that the main issues in the case were that Jensen violated his probation and that two of the victims testified at the preliminary hearing that they were afraid, which supported the robbery counts.

Defense counsel said Jensen indicated to her that she was rude, that she did not talk to him, that she told him he did not understand anything, and that she did not do anything for him. But according to counsel, "There's no other way that I can explain it to him." She explained that even if Jensen prevailed at trial, in this case, the court could impose a three-year eight-month prison

---

[4] An August 13, 2019 minute order states that Jensen rejected "the People's early disposition offer of 2 years state prison total in this matter and case numbers 9PC02382, KA116263 and KA117969."

[5] In case KA116263, Jensen was on probation for a felony conviction for driving or taking a vehicle without the consent of the owner. (Veh. Code, § 10851, subd. (a).)

7

sentence for the felony offense for which Jensen was on probation. And if Jensen lost at trial, he could receive a sentence, "which is upward to about nine years" in this case and which could run consecutively to the prison sentence in the probation case.

Jensen acknowledged that for the first plea offer, "I did ask for more time and . . . to think about it." But that offer was off the table, and "I understand that that's my fault." Jensen complained that defense counsel gave him "no time to talk, ask her any types of questions about the deal, what's going on, because I wanted to take it to trial, I was not comfortable with the deal." Jensen explained, "I'm not a violent person. I don't feel like this is a robbery. It was a theft. I'll do the time. It's not a robbery. I'm not a violent person. I have no violence in my record, nothing." Jensen also explained defense counsel "basically threw the deal in my face, called me stupid, told my family in court that I need to take a deal and go bye." Jensen also said that he "get[s] frustrated" and "a little mad because she don't [sic] let me talk," and "[s]he snaps and walks out." Jensen concluded, "So I mean, I'm not saying she's a bad lawyer. It's just I can't get through to her."

Defense counsel said she had been a criminal defense attorney for 31 years. Jensen started to speak, but counsel continued. She explained she had not had any arguments with Jensen "because he's generally very polite to me, where his mother jumps up in my face every time I see her." Counsel told Jensen's mother that she would not speak to her again and that "[f]or [Jensen] to say I told his mother he needs to go bye is hilarious." Counsel said Jensen's "delays caused the offer to get

8

worse," and she could not do anything about that, but she would proceed according to Jensen's wishes.

Jensen responded, "Correct," and said he understood sentencing on the violation of probation was out of defense counsel's control.

Defense counsel said, "all he has to do is tell me would he like a trial or would he like to accept the plea." Counsel said if Jensen wanted to go to trial, "that's fine. I can do it. No problem." But the core issue was Jensen could not make up his mind whether he wanted to accept a plea deal or go to trial.

Jensen repeated he "never said you're a bad lawyer" but felt his counsel was not "trying to fight my case or have any competence of me winning my case."

The court asked Jensen, "What do you want her to do?" Jensen responded, "Set for trial."

Defense counsel asked the court to explain to Jensen his exposure on the felony underlying his probation. The court said Jensen faced a prison sentence of three years eight months for the felony in his probation case and "maybe up to 13 years" prison if he was acquitted of the robbery charges but convicted of the remaining counts in this case. Jensen reiterated his belief that the incidents were not robberies. The court asked Jensen if he would be okay with a 13-year sentence, and Jensen responded, "No." The court observed, "Well, you see, I think that's the dilemma [defense counsel] is in." The court went over Jensen's exposure again, asking Jensen to consider what sentence length he might receive if convicted by a jury.

The court asked Jensen, "What do you expect [defense counsel] to do? Has she told you can't have your trial?" Jensen responded, "No." The court asked Jensen, "All right. She says

9

she was going to take a dive if you were going to trial?" Jensen again responded no. The court asked Jensen, "Then what is it that's the problem?" Jensen started to speak, but the court interrupted to confirm that defense counsel had explained the options to Jensen. The court asked again, "So what's the problem? Your perceived inappropriateness of her delivery? What about your mom? Did she have her two cents in also?" Jensen nodded yes. The court asked, "Do you think [your mother is] helping the cause?" Jensen shook his head to indicate no. The court asked if there was anything else Jensen wanted to say, and he responded no.

Defense counsel reiterated that she and Jensen "have had no problems," that Jensen was "extremely polite and respectful," and that she thought he was "a nice guy." She repeated her concern that at the preliminary hearing, the two victims had testified to their fear during the incidents, so "I don't know what you're thinking is going to happen at trial" because "[i]f they were fearful, we're going to eat the robberies. I hate for you to get nine, 12 years for no reason." She concluded, "But I will do the trial for you. No problem. And I'll do my best. [ ] I apologize if I hurt your feelings. But this is how I talk to my clients, because it's serious and we're in trouble here, because of your exposure, not because I'm not a good lawyer. What do you want to do?"

Jensen replied, "I just don't understand. Like if -- " and defense counsel interrupted, instructing Jensen, "Tell the court what you don't understand because I can't explain it to you any other way." Jensen said, "It's that you never reviewed my case. You never told me what was wrong -- ." Counsel interrupted again, explaining that she had told Jensen everything she had done to prepare for the case, including reviewing the case file, the

10

surveillance videos, the photographs, the police reports and the preliminary hearing transcript, that she was ready to go to trial, and that Jensen needed to choose how he wanted to proceed.

The court denied the motion.

2.  *Applicable law and standard of review*

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215; accord, *McCoy v. Louisiana* (2018) 584 __ U.S. __ [138 S.Ct. 1500, 1507].) "[T]he Sixth Amendment right to effective representation virtually compels a hearing and an order granting a motion for substitution of counsel when 'there is a sufficient showing that the defendant's right to the assistance of counsel would be substantially impaired if [the defendant's] request was denied.'" (*People v. Stankewitz* (1990) 51 Cal.3d 72, 87–88.)

"'It is the very nature of a *Marsden* motion . . . that the trial court must determine whether counsel has been providing competent representation. Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the future. But the decision must always be based on what has happened in the past.'" (*People v. Sanchez* (2011) 53 Cal.4th 80, 88.)

""'A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" [Citation.] 'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order

substitution is likely to result in constitutionally inadequate representation.""" (*People v. Streeter* (2012) 54 Cal.4th 205, 230; accord, *People v. Loya* (2016) 1 Cal.App.5th 932, 945.)

"'We review the denial of a *Marsden* motion for abuse of discretion.' [Citation.] 'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel."'" (*People v. Streeter, supra*, 54 Cal.4th at p. 230; accord, *People v. Loya, supra*, 1 Cal.App.5th at p. 944.)

3.      *Jensen failed to show he and his counsel were embroiled in an irreconcilable conflict*

At the *Marsden* hearing, Jensen did not express the existence of an irreconcilable conflict with defense counsel. In fact, Jensen acknowledged that his counsel was not a "bad lawyer" and that she told him his options. According to counsel, they had no problems getting along.

Jensen's primary grievances were that he felt unheard by and unable to ask questions[6] about his case to his defense counsel and that he believed counsel was not fighting hard enough for him.

However, standing alone, a defendant's subjective feelings about his counsel cannot support granting a *Marsden* motion. This is because "the way in which one relates with his attorney[ ] does not sufficiently establish incompetence." (*People v. Silva* (1988) 45 Cal.3d 604, 622; accord, *People v. Cole* (2004) 33 Cal.4th 1158, 1192.) "'[I]f a defendant's claimed lack of trust in, or

---

[6]      Specifically, defense counsel walked away when Jensen tried to talk to her, and counsel ignored Jensen when he announced he wanted to proceed to trial.

inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law."'" (*People v. Michaels* (2002) 28 Cal.4th 486, 523.)

Further, Jensen's belief about defense counsel's "purported inadequate investigation, trial preparation, and trial strategy were essentially tactical disagreements, which do not by themselves constitute an 'irreconcilable conflict.'" (*People v. Cole, supra*, 33 Cal.4th at p. 1192; accord, *People v. Welch* (1999) 20 Cal.4th 701, 728–729.) Despite counsel's concern that the outcome of a trial could result in a longer sentence than the proposed plea deal, counsel said she was prepared to go to trial if Jensen wished to do so, and she assured Jensen and the court that she would "do her best." (See *People v. Valdez* (2004) 32 Cal.4th 73, 95-96 [no abuse of discretion in denying *Marsden* motion "[a]lthough counsel did not agree with all of defendant's suggestions, he maintained that he was prepared to go to trial and would be able to work with defendant to address his concerns"].) She had explained to Jensen everything she had done to prepare. To the extent there was any credibility conflict between Jensen and his counsel, the court was entitled to credit defense counsel's representations. (See *People v. Orey* (2021) 63 Cal.App.5th 529, 569; accord, *People v. Myles* (2012) 53 Cal.4th 1181, 1207-1208.)

13

B.   *Substantial Evidence Supported the Jury's Verdict on Count 6*

Jensen contends insufficient evidence supported the jury's finding that he failed to pay for the merchandise he was charged with stealing from The Home Depot on March 26, 2019.

We disagree.

1.   *Relevant proceedings*

Sanchez, an asset protection specialist for The Home Depot, was at the Monrovia store on March 26, 2019. He was dealing with an unrelated incident when he was notified of a theft, which prompted him to review surveillance footage.

At trial, the prosecution presented seven clips from surveillance videos. Sanchez described the locations around the store depicted in the clips. In one video, Jensen entered the store with an empty cart and placed merchandise in the cart. The items in the cart included six boxes containing power tools. A rug covered the merchandise at one point, which Sanchez believed was an attempt to "conceal [the merchandise] from view." At "garden exit no. 2," which has "p[oints] o[f] s[ale]," Jensen entered the frame with a trash can in his cart in addition to the boxes of power tools. Next, Jensen was "running out of the garden exit with power tools." Finally, in an "exterior garden shot showing the exit of the garden into the parking lot," a man drove up to Jensen.[7] Jensen loaded the trash can, which

---

[7]   Sanchez did not expressly testify about the make, model and color of the vehicle in connection with the March 26 incident but later testified a green sedan was seen picking up the merchandise in the incidents depicted in the surveillance footage he reviewed.

14

contained the boxes of power tools, into the vehicle, the man stepped out of the driver's seat, and Jensen got into the driver's seat. Jensen and the man drove away from the store.

Sanchez identified the six items taken and testified their total value was $2,371. Jensen's counsel did not cross-examine Sanchez.

### 2. *Applicable law and standard of review*

Theft of personal property valued at more than $950 constitutes the felony of grand theft. (§487, subd. (a).) Section 484, subd. (a) defines "theft" as "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another . . . ." Theft occurs when a person takes possession of personal property belonging to another, without the owner's consent and with the intent to deprive the owner of possession permanently. (See *People v. Davis* (1998) 19 Cal.4th 301, 305; accord, *People v. Vidana* (2016) 1 Cal.5th 632, 639.)

When sufficiency of the evidence is challenged on appeal, we determine whether the record discloses substantial evidence from which, considered as a whole, a reasonable trier of fact could conclude that the crime was committed as charged. (See *People v. Truong* (2017) 10 Cal.App.5th 551, 555-556 (*Truong*); accord, *People v. Maciel* (2013) 57 Cal.4th 482, 514-515.) In making this determination, we view the evidence in the light most favorable to the judgment and presume every fact in support of the judgment that the jury could have reasonably deduced from the evidence. (See *Truong,* at p. 556.) Substantial evidence is "evidence that is reasonable, credible and of solid value . . . ." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) The same standard applies to our review of circumstantial evidence. (See *People v. Ceja* (1993) 4 Cal.4th 1134, 1138.)

15

"The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on "'isolated bits of evidence.""" (*People v. Cuevas* (1995) 12 Cal.4th 252, 261.) The testimony of a single witness, if believed by the finder of fact, can constitute sufficient evidence. (*People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 885; accord, *Truong, supra,* 10 Cal.App.5th at p. 556 ["[U]nless [a witness's] testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction."].) When two or more inferences can reasonably be deduced from the facts, we do not substitute our deductions for those of the trier of fact. (See *People v. Garcia* (2020) 46 Cal.App.5th 123, 144-145 ["We do not reweigh the evidence or resolve conflicts in the testimony when determining its legal sufficiency."]; accord, *People v. Ceja, supra,* 4 Cal.4th at p. 1139.)

3. *Substantial evidence supported the jury's finding that Jensen stole merchandise*

Because the surveillance footage does not have time stamps, Jensen contends at some point, not on video, he could have paid for his items at the cash register. Jensen also points out Sanchez did not explicitly testify that Jensen failed to pay for the merchandise. Finally, Jensen urges us to conclude the jury improperly inferred he did not pay for the items based on the evidence presented about other similar offenses.

However, the surveillance video coupled with Sanchez's testimony was credible and solid evidence from which the jury could have reasonably deduced that Jensen did not pay for the merchandise before leaving the store. Sanchez's job was to investigate thefts from the store. As he explained, in the surveillance footage, Jensen could be seen concealing boxes of

16

power tools in his cart with a rug.  The jury could have inferred that Jensen hid the merchandise to steal it.  (See *People v. Hooker* (1967) 254 Cal.App.2d 878, 880, disapproved on another ground in *People v. Corey* (1978) 21 Cal.3d 738, 746 ["His objective in concealing merchandise was to steal it."].)  In addition, the footage showed Jensen "running out of the garden exit with the power tools."  The jury could have inferred Jensen's consciousness of guilt.  (See, e.g., CALCRIM No. 372 ["If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he or she was aware of his or her guilt.  [ ]  However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."]; *People v. Tully* (2012) 54 Cal.4th 952, 1024 [approving standard criminal jury instructions that allow "any inference regarding guilt to be drawn from the circumstances described by them . . . [including] flight . . [as] permissive . . . [but] insufficient alone to prove guilt"]); accord, *People v. Scully* (2021) 11 Cal.5th 542, 596.)

## DISPOSITION

The judgment is affirmed.


IBARRA, J.[*]


We concur:


PERLUSS, P. J.


FEUER, J.

---

[*]    Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.