Filed 9/17/25  P. v. Tagle CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083596 |
| v. | (Super.Ct.No. SWF2100687) |
| JUAN MANUEL TAGLE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jason Armand, Judge.

Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant

and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B.

Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

In May 2021, defendant and appellant Juan Manuel Tagle "snatched" a purse in H.L.'s possession while inside a casino parking structure.  A subsequent search of defendant's vehicle produced defendant's California identification card, a BB gun, a lock-pick kit, a designer hand bag containing foreign currency, multiple counterfeit $100 bills, miscellaneous jewelry and watches, and mail correspondence addressed to someone other than defendant.  When defendant was taken into custody by law enforcement, he had a debit card belonging to someone named L.S. in his possession.

As a result of this incident, a jury found defendant guilty of the robbery of H.L. (Pen. Code,[1] § 211; count 1); unlawful possession of personal identifying information of L.S. (§ 530.5, subd. (c)(1); count 3); and unlawful possession of burglary tools (§ 466; count 5).  Defendant was sentenced to a term of 25 years to life in state prison for the robbery conviction pursuant to the alternate sentencing provisions of the three strikes law (§§ 667, subds. (b)-(i), 1170.12) as the result of four prior convictions, as well as concurrent terms for the remaining offenses.

---

[1] Undesignated statutory references are to the Penal Code.

On appeal, defendant contends: (1) the trial court erred by refusing to give a requested pinpoint instruction providing the jury a specific definition of "force" with respect to commission of a robbery; (2) substantial evidence does not support his convictions for unlawful possession of personal identifying information of L.S. or unlawful possession of burglary tools; and (3) the trial court abused its discretion by denying his *Romero*[2] motion inviting the trial court to dismiss his prior strike offenses in the interest of justice pursuant to section 1385. We disagree with each of the claims asserted by defendant on appeal and affirm the judgment.

## II. BACKGROUND

A. *Facts and Charges*

In May 2021, staff at a casino responded to H.L.'s screaming in the casino's parking structure. H.L. reported that she had been threatened by a man wielding a gun, she attempted to run away, and she had her purse "snatch[ed]" by another man when she attempted to seek help. Law enforcement reviewed the casino's surveillance videos and determined that H.L.'s reported encounters actually involved the same man. Law enforcement officers searched the man's vehicle and recovered a California identification card belonging to defendant; a BB gun; and a lock-pick kit, among other items. They also discovered a debit card belonging to L.S. in defendant's possession when they took defendant into custody.

As a result of this incident, defendant was charged with robbery (§ 211; count 1);

_____

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

3

possession of stolen property valued over $950 (§ 496, subd. (a); count 2); unlawful possession of personal identifying information of L.S. (§ 530.5, subd. (c)(1); count 3); unlawful possession of counterfeit currency (§ 476; count 4); and unlawful possession of burglary tools (§ 466; count 5). It was also alleged that defendant had suffered four prior convictions qualifying as serious felonies (§ 667, subd. (a)) and strike offenses (§§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)).

B. *Relevant Evidence at Trial*[3]

H.L. testified that, in the early morning of May 18, 2021, she was looking for her boyfriend outside of a casino's parking structure. She was carrying a suitcase, some bags, and a purse because she and her boyfriend were planning to return home. A man pulled up in his vehicle, exited the vehicle, and asked H.L. to give him money. When H.L. refused, the man returned to his vehicle, retrieved what appeared to be a firearm, displayed the object in a threatening manner, and demanded H.L. get into his vehicle. H.L. ran from the man in fear, attempting to hide from him. After hiding for about 10 minutes, she entered the parking structure, saw what she believed to be another man standing near a charging station, and yelled for help. The man ran over but then immediately "snatch[ed]" her purse. H.L. testified she was unable to resist because she

---

[3] Because defendant only challenges the sufficiency of the evidence with respect to the element of intent necessary to convict him for unlawful possession of personal identifying information (§ 530.5, subd. (c)(1); count 3) and unlawful possession of burglary tools (§ 466; count 5), we summarize only the evidence relevant to resolution of these claims on appeal and the evidence necessary to provide context.

4

was already in fear from her first encounter.[4] H.L. was terrified and screamed, drawing the attention of casino staff.

When H.L. was first interviewed by law enforcement officers, she expressed the belief that the man who initially asked her for money and the man who took her purse were different people. She believed the two men were dressed differently. And H.L. was unable to identify defendant when law enforcement attempted to conduct an "infield line up." However, when testifying at trial, H.L. clarified: her interaction with the man who took her purse lasted only seconds; it was dark during both encounters; and, at the time, she was scared and simply looking for someone to help her. In retrospect, she now believed it was likely the same person who initially threatened her with a firearm and took her purse.

Casino staff located surveillance video of both incidents. Upon review of the surveillance video, casino staff and law enforcement were able to identify the vehicle involved in the initial incident and also determine that the two incidents involved the same suspect. Law enforcement searched the vehicle after obtaining a warrant and discovered: (1) a wallet containing defendant's California identification card; (2) a BB gun; (3) a lock-pick kit; (4) counterfeit $100 bills; (5) an assortment of jewelry and watches; (6) a designer handbag; and (7) mail correspondence addressed to someone other than defendant. Law enforcement officers kept the vehicle under surveillance and

---

[4] Specifically, H.L. stated: "And the man that took my handbag. And I was able to get chased by this man because I was so scared already and I peed myself already."

eventually arrested defendant when he returned to retrieve the vehicle.

While being taken into custody, law enforcement officers discovered a debit card belonging to L.S. in defendant's pocket. L.S. testified that he did not know defendant and could not think of any reason why defendant would be in possession of L.S.'s debit card. A subsequent investigation also revealed that the designer handbag found in defendant's vehicle was stolen from a storage facility the day prior to the incident with H.L.

C. *Verdict and Sentence*

The jury found defendant guilty of robbery of H.L. (§ 211; count 1); guilty of unlawful possession of personal identifying information of L.S. (§ 530.5, subd. (c)(1); count 3); guilty of unlawful possession of burglary tools (§ 466; count 5); and not guilty on the remaining counts. In a bifurcated proceeding, defendant admitted the truth of the special allegations that he had suffered four prior convictions qualifying as serious felonies and strike offenses. Specifically, the prior convictions consisted of the robbery and kidnapping of two different victims.

Prior to sentencing, defendant filed a *Romero* motion inviting the trial court to dismiss his prior strike offense in the interest of justice pursuant to section 1385. Defendant argued that his four prior strike convictions were all committed during the same incident and should be considered by the trial court as only a single prior strike conviction for purposes of sentencing. The People filed written opposition noting that defendant's four prior strike convictions arose out of separate criminal acts committed against multiple victims. The People also highlighted the fact that defendant had a

6

lengthy criminal history.[5]  The trial court denied defendant's invitation to dismiss his prior strike offenses, concluding that defendant did not fall outside the spirit of the three strikes law.

Defendant was sentenced to a term of 25 years to life in state prison, representing 25 years to life for the robbery pursuant to the alternate sentencing provisions of the three strikes law (count 1; §§ 211, 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)); a concurrent term of 364 days for unlawful possession of personal identifying information of L.S. (count 3; § 530.5, subd. (c)(1)); and a concurrent term of 180 days for unlawful possession of burglary tools (count 5; § 466).[6]  Defendant appeals from the judgment.

## III.  DISCUSSION

### A.  *The Trial Court Did Not Err Declining to Give Defendant's Pinpoint Instruction*

Defendant's first claim on appeal is that the trial court erred by refusing to give a pinpoint instruction on the definition of "force" with respect to the robbery charged in count 1.  Specifically, defendant requested the trial court include the following statement with the standard jury instructions for robbery:  " 'The force required for robbery must be more than the incidental touching necessary to take the property.' "  We find no error in the trial court's refusal to modify the standard jury instructions with this statement.

---

[5]  The record shows that defendant was convicted for offenses arising out of at least eight separate and distinct incidents between 2004 and 2021.  His criminal history included convictions for false imprisonment (§ 236), battery (§ 242), kidnapping (§ 207, subd. (a)), and robbery (§ 211).

[6]  The trial court also imposed an additional five years for each of the prior serious felony convictions but stayed execution of these enhancements. (§ 667, subd. (a).)

" ' "Under appropriate circumstances, 'a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case. . . .' " ' [Citation.] Pinpoint instructions ' "relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case," ' " and "parties are entitled to legally correct and factually warranted pinpoint instructions, should they request such additional instruction." (*People v. Lyon* (2021) 61 Cal.App.5th 237, 252.)  And "[w]e review claims of instructional error de novo." (*Lyon*, at p. 253; *People v. Scully* (2021) 11 Cal.5th 542, 592.)  Here, we conclude the trial court did not err for two, independent reasons.

First, "a trial court is not required to instruct on the meaning of a commonly understood term and does not err in refusing a requested instruction which attempts to define such a word or phrase." (*People v. Forbes* (1996) 42 Cal.App.4th 599, 606; *People v. Rogers* (2006) 39 Cal.4th 826, 897 ["The trial court is not obligated to define the terms 'aggravating' and 'mitigating,' even upon request, because they are commonly understood."]; *People v. Johnson* (2015) 234 Cal.App.4th 1432, 1454 [" '[I]t is well settled that where the terms "have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required." ' "].)  And it is well settled that " '[t]he terms "force" and "fear" as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors.' " (*People v. Griffin* (2004) 33 Cal.4th 1015, 1025-1026; *People v. Anderson* (1966) 64 Cal.2d 633, 640.)  Thus, even when requested, the trial court is not required to define the term "force" as used in the definition of the crime of robbery.

Second, a trial court does not err in denying a pinpoint instruction where "the point of the requested instruction was readily apparent to the jury from the remaining instructions." (*People v. Scully* (2021) 11 Cal.5th 542, 593.) Here, the trial court gave the standard jury instructions setting forth the elements of robbery, grand theft, and petty theft. The jury was further instructed that it could only proceed to consider the lesser offense of theft if it first concluded that defendant was not guilty of robbery. Because the jury was already instructed that taking possession of property was an element common to both robbery and theft,[7] the instructions taken together sufficiently distinguished the concept that force other than that necessary to accomplish the taking of property was an additional element required to find defendant guilty of robbery.

Defendant has cited no authority for the proposition that the standard instructions on robbery and theft, when given together, are insufficient to apprise the jury of the need to find the use of force or fear as a separate and distinct element of robbery. Indeed, the

---

[7] The jury was instructed pursuant to CALCRIM 1600 that the essential elements of robbery required finding that: (1) defendant took property that was not his own; (2) the property was in the possession of another person; (3) the property was taken from the other person or her immediate presence; (4) the property was taken against that person's will; (5) the defendant used force or fear to take the property or to prevent the person from resisting; and (6) when the defendant used force or fear, he intended to deprive the owner of the property permanently or to remove the property from the owner's possession. The jury was also instructed pursuant to CALCRIM 1800 that the essential elements of theft required finding that: (1) defendant took possession of property owned by someone else; (2) the defendant took the property without the owner's consent; (3) defendant intended to deprive the owner of the property permanently or to remove it from the owner's possession; and (4) the defendant moved the property and kept it for some period of time.

9

cases cited by defendant in his opening brief stand for the proposition that, when there is a factual dispute regarding whether the defendant used the necessary quantum of force to constitute robbery, the trial court should give the standard instructions on theft as a lesser included offense. (*People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246 [Instructions on theft should be given when there is "a factual question whether the defendant did [or] did not use force against the victim."], disapproved on other grounds in *People v. Mosby* (2004) 33 Cal.4th 353, 364; *People v. Morales* (1975) 49 Cal.App.3d 134, 141 [Instructions on theft should be given as a lesser included offense where the evidence "left sufficiently open the question of whether the element of force was present so as to entitle the defendant to have the jury consider the matter."].)

Thus, in giving the standard jury instructions on both robbery and theft, the trial court here did precisely what was called for in the authorities relied upon by defendant, and we find no instructional error warranting reversal. Because we find no error, we need not address the People's additional argument that any error was not prejudicial because the overwhelming evidence supported a conclusion that defendant accomplished the robbery by use of fear.

B. *Substantial Evidence Supports the Verdict on Count 3 and Count 5*

Defendant also argues on appeal that there was insufficient evidence to support his convictions for unlawful possession of another's identifying information (count 3; § 530.5, subd. (c)(1)) and unlawful possession of burglary tools (count 5; § 466). We disagree.

10

1. Standard of Review

"In reviewing the sufficiency of the evidence to support a jury's verdict finding a defendant guilty of a criminal offense, we apply the substantial evidence standard of review. [Citation.] 'Under this standard, the court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Johnson* (2019) 32 Cal.App.5th 26, 57.) Under this standard, " '[t]he testimony of one witness, if believed, may be sufficient to prove any fact. [Citation.]' 'Further, "the appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Id.* at pp. 57-58.) Where the evidence is susceptible of more than one inference, " ' " ' "[i]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment." ' " ' " (*Id.* at p. 58.)

2. Unlawful Possession of Another's Personal Information

Section 530.5, subdivision (c)(1), prohibits the acquisition or possession of the personal identifying information of another person with the intent to defraud. "The statute prohibits a person from acquiring, retaining, or using information, rather than taking it, an indicator that the Legislature was concerned with possession or use rather than with theft." (*People v. Weir* (2019) 33 Cal.App.5th 868, 874; *People v. Harrell* (2020) 53 Cal.App.5th 256, 263 ["The gravamen of section 530.5 is [not] directed . . . at

11

unlawful taking of property."].)

On appeal, defendant challenges only the sufficiency of the evidence to support the element of intent to defraud, arguing that mere possession of another person's personal information in itself cannot support a finding of intent. However, actual use of the personal identifying information is "not an element necessary to prove an intent to defraud" and "a jury [can] reasonably infer an intent to defraud from the circumstances surrounding [a defendant's] possession." (*People v. Truong* (2017) 10 Cal.App.5th 551, 558.)

Here, defendant does not dispute that he had a debit card belonging to L.S. in his possession at the time he was detained. L.S. testified that he did not know defendant or why defendant would be in possession of the debit card. During his testimony, L.S. expressed the belief that he lost the card while at the casino prior to the date defendant was found in possession of the card. And there was testimony that defendant had left the casino grounds before being apprehended upon his return. Thus, even if defendant merely found the lost debit card while at the casino, the jury could reasonably infer that he formed the intent to use the card in the future because defendant kept the card in his possession even after leaving the casino premises.

Additionally, mail correspondence addressed to someone other than defendant was recovered from defendant's vehicle. Possession of multiple documents or items "containing identifying information, which [the defendant] should not have possessed" constitutes circumstantial evidence to support an inference of defendant's intent to defraud with respect to possession of a credit card bearing the victim's name. (*People v.*

*Truong*, *supra*, 10 Cal.App.5th at p. 558.) Thus, the jury was also entitled to infer defendant's intent to defraud from the fact that defendant was in possession of personal information belonging to multiple people.

Because the record contains substantial evidence upon which the jury could have relied to infer that defendant had the intent to defraud while in possession of L.S.'s debit card, sufficient evidence supports defendant's conviction for unlawful possession of personal information, and reversal is not warranted on this basis.

### 3. Unlawful Possession of Burglary Tools

Section 466 generally prohibits the possession of specified burglary tools with the intent to commit a burglary. (*Ibid.*) The elements of the offense require the prosecution to prove: " '(1) possession by the defendant; (2) of tools within the purview of the statute; (3) with intent to use the tools for the felonious purposes of breaking or entering.' " (*People v. Bay* (2019) 40 Cal.App.5th 126, 136.)

On appeal, defendant does not dispute that the evidence showed he was in possession of a lock-pick kit classified as a prohibited item under section 466. He challenges only the sufficiency of the evidence to support a finding he intended to use the lock-pick kit to commit a felonious breaking or entering.

Here, the evidence was undisputed that a lock-pick kit was recovered from defendant's vehicle. And defendant's act of "driving around with the tools in his car, rather than keeping them in a workshop or garage" is circumstantial evidence of the intent to use the tools to commit a burglary. (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1092.) Additionally, jewelry, watches, and a designer handbag were all recovered

13

from defendant's vehicle along with the lock-pick kit. And the designer bag found in defendant's vehicle was identified as a bag stolen from a storage facility the prior day. Where a defendant is in possession of both burglary tools and recently stolen items, such evidence "taken as a whole, sufficiently establishe[s] that defendant possessed the burglary tools with the requisite felonious intent." (*People v. Kelly* (2007) 154 Cal.App.4th 961, 968 [sufficient evidence to support a finding of intent under § 466 where defendant was apprehended in the possession of burglary tools and recently stolen items].)

Because the record contains substantial evidence upon which the jury could have relied to infer that defendant possessed the burglary tools with the requisite intent to commit a burglary, sufficient evidence supports defendant's conviction for unlawful possession of burglary tools and reversal is not warranted on this basis.

## C. The Record Does Not Show Denial of the Romero *Motion Was an Abuse of Discretion*

The only remaining argument asserted on appeal is that the trial court abused its discretion in denying defendant's *Romero* motion, inviting the trial court to dismiss multiple prior strike offenses in the interests of justice pursuant to section 1385. We disagree.

In *Romero*, 13 Cal.4th 497, our Supreme Court held " 'that a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to . . . section 1385(a).' " (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) "When considering whether to strike a prior conviction, the factors

14

a court considers are whether, in light of the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of the defendant's background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though the defendant had not previously been convicted of one or more serious and/or violent felonies." (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1140.) "[A] trial court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*Carmony*, at p. 374.) "Only extraordinary circumstances justify finding that a career criminal is outside the Three Strikes law. [Citation.] Therefore, 'the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary.' " (*Avila*, at p. 1140.)

Defendant concedes on appeal that the record showed he had an extensive criminal history, which included the commission of multiple violent offenses in the 15 years prior to his commission of the present offenses. } Defendant's extraordinary criminal history included offenses beginning in 1998 and continuing up to the present crimes. Defendant's prior criminal history included two wardship petitions and convictions for violations of Health and Safety Code section 11377 (a) (possession of a controlled substance) and sections 148.9 (false identification to a peace officer); section 242 (battery); section 207 (kidnapping); section 211 (robbery); section 4573 (possession of a controlled substance in prison); section 30305 (unlawful possession of ammunition by a felon); and several other offenses. Defendant's offenses were continuous with no

15

appreciable break from criminal activity while he was out of custody. In fact, defendant was on probation at the time he committed the present offenses. As our Supreme Court has opined, this type of criminal history is " 'an exemplar of the "revolving door" career criminal to whom the Three Strikes law is addressed,' " and a decision not to strike a prior strike conviction under such circumstances "is neither irrational nor arbitrary and does not constitute an abuse of . . . discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 379.) Unquestionably, this was a permissible factor that weighed in support of the trial court's decision to deny defendant's *Romero* motion.

Moreover, the circumstances of the current offenses were serious. Defendant committed robbery, a new serious felony, and a violent felony (see §§ 1192.7, subd. (c)(19), 667.5, subd. (c)(9)), by confronting the victim at approximately 4:45 a.m. in a casino parking lot, demanding that the victim get in his car and hand him all her money, and displaying, in a threatening manner, what appeared to her to be a gun. The victim was so terrified that she "peed" herself. And when she yelled for help after coming out from hiding, defendant confronted her again and snatched her purse.

Thus, even accepting defendant's argument that his four prior strike offenses should have been credited only as two prior strike offenses, thereby making the prospect of "striking one more strike more feasible and reasonable," we cannot conclude that the trial court's ultimate decision to decline to strike one more strike was irrational or arbitrary where the record contains clear factors supporting the manner in which the court exercised its discretion. All of the factors related to defendant's background, character, and prospects were set forth in the parties' briefs below and considered by the trial court.

16

Sadly, defendant's prospects were poor given his continuous history of criminal activity, including while in prison.

On appeal, " ' "[i]t is not enough to show that reasonable people might disagree about whether to strike one or more" prior conviction allegations.' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.)  Unless the circumstances present a situation in which the trial court's decision " 'is so irrational or arbitrary that no reasonable person could agree with it' " (*ibid.*), defendant has not met his burden to show an abuse of discretion warranting reversal.  We discern no abuse of discretion in the court's decision not to strike any of defendant's strikes.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:


RAMIREZ _____
P. J.


MENETREZ _____
J.